STATE OF NORTH CAROLINA v. ALTON LEAMONTE WALKER

No. 409A85

(Filed 18 February 1986)

**Constitutional Law § 76; Criminal Law § 48.1— right to remain silent—cross-examination improper—no plain error**

Though the prosecutor's cross-examination of defendant concerning his silence about an alibi after he was arrested and advised of his constitutional rights violated the implicit assurance contained in the *Miranda* warnings that silence will carry no penalty, such questioning did not amount to plain error entitling defendant to relief since the prosecutor was developing defendant's testimony and did not dwell on the fact that defendant had not mentioned his alibi defense to authorities following his arrest; when the questions complained of were asked on cross-examination, defendant gave answers which the jury in all probability found provided a clear, cogent and reasonable explanation for his having failed to mention or think about his alibi; defendant's answers indicated that, when first informed that he was being charged with rape, he did not know when or where the crime was alleged to have taken place or the identity of the victim; the jury could have found nothing unusual in his failure to mention a potential alibi witness before he had such information; the victim's identification of defendant as the perpetrator of the offense was unqualified and unwavering; and other evidence placed defendant in the presence of the victim near the scene of the crime on the same night it occurred.

APPEAL by the defendant from a judgment entered on 3 April 1985 by *Stephens, J.,* in Superior Court, JOHNSTON County. Heard in the Supreme Court on 17 December 1985.

*Lacy H. Thornburg, Attorney General, by James Peeler Smith, Assistant Attorney General, for the State.*

*Malcolm R. Hunter, Jr., Acting Appellate Defender, by Louis D. Bilionis, Assistant Appellate Defender, for the defendant appellant.*

MITCHELL, Justice.

The defendant was convicted upon a proper indictment of one count of first degree rape. He appealed his conviction and mandatory sentence of life imprisonment to this Court as a matter of right.

By his assignment the defendant contends that, despite his failure to object at trial, he must have a new trial because of the trial court's "plain error" in permitting the prosecutor to cross-examine him concerning his post-arrest silence. We do not agree.

The State's evidence tended to show that around 8:15 p.m. on Friday, 16 November 1984, David Soard and the defendant Alton Leamont Walker went to a convenience store in Selma, North Carolina. Soard testified that when they arrived at the store, his niece Anita Gibson was present together with a fifteen-year-old girl identified in the indictment as the victim in this case. Soard introduced the defendant Walker to the victim and told Walker that she was his niece's friend. Soard and the defendant then left the store together, had a few drinks, and parted company around 10:00 p.m.

Anita Gibson testified that she was with the victim on the night of 16 November 1984 at the convenience store. Her testimony tended to corroborate Soard's account of having introduced the victim to the defendant at the store. Gibson testified that she parted company with the victim but saw her later the same night at Disco 82, a local nightclub. Gibson saw the victim and the victim's brother at the club and noticed that the defendant was also present. After talking with the victim twenty or thirty minutes, Gibson went to the bathroom and did not see the victim again that night.

The victim also testified. She corroborated prior testimony concerning her introduction to the defendant at the convenience store on the evening of 16 November 1984. She testified that later that night she and her brother walked to Disco 82. On the way they drank some beer and split a marijuana cigarette. After arriving at the club around 11:00 p.m., they went inside. The victim talked with Anita Gibson until about 11:45 p.m. The victim then went to the lobby to get some fresh air. While she was in the lobby, the defendant walked through the front door and approached her.

She and the defendant went to a nearby washerette to smoke a marijuana cigarette. The defendant asked her to kiss him but she refused. He grabbed her jacket and pulled her closer to him and tried to kiss her. She attempted to pull away from him. The victim testified that she then "hit him up beside of his head and he started smacking me." The defendant's blows loosened three of the victim's teeth and "broke a bone in her gum." She ran outside, but he overtook her, hit and choked her, and ripped her jacket. She testified that he said: "You better calm down because I got a gun in my pocket and if you don't do what I say, I'll use it." She never saw a gun but obeyed him because she was frightened. The defendant then dragged her into the back of an alley and directed her to pull down her pants. He struck her with his hand causing her to fall to the ground. Her nose and mouth were bleeding. The defendant then had sexual intercourse with the victim against her will.

O. E. Evans, head of the Detective Division of the Selma Police Department, testified that he interviewed the victim the morning following the rape. He testified to various physical injuries that he observed on the victim. He also read the statement the victim made to him during the interview. The statement tended to corroborate her testimony at trial. Evans testified that the victim told him that the defendant was the man who had raped her. She also picked the defendant out of a photographic lineup.

The defendant was the only witness for the defense. He denied ever having intercourse with the victim. He testified that he was at the convenience store with David Soard on the night in question but denied having been introduced to the victim. He also did not recall seeing Soard's niece Anita Gibson at the store. The

defendant testified that he went to Disco 82 on the night in question around 9:50 p.m. and left after twenty or thirty minutes. He denied having seen the victim at Disco 82 and denied smoking any marijuana that evening.

The defendant said that after leaving Disco 82, he went to a bootlegger's house where he met a friend, Rebecca King. He testified that he was having problems with his girl friend and that he talked with King about these problems for an hour to an hour and a half while walking around downtown Selma. He did not know how to get in touch with King at the time of the trial, but he believed she was in the Job Corps.

The defendant contends that his rights under the Constitution of the United States and the Constitution of North Carolina were violated when the prosecutor cross-examined him concerning his silence after he was arrested and advised of his constitutional rights in the present case. He argues that this deprivation of rights entitles him to a new trial.

During the course of the cross-examination of the defendant, the prosecutor questioned him as follows:

Q. You didn't tell Ricky Evans anything about Rebecca King at any time, did you?

A. I didn't do too much talking with any of them, because I know they had me charged.

* * *

Q. You say you don't know what Ricky Evans was charging you with when he—

A. No, I sure didn't.

Q. And you didn't tell him—

A. Until they came to the house. They came to the house that Sunday and told me they wanted to talk to me down at the police department. When they got downtown, he said "I am charging you with first degree rape." That's exactly the words he told me.

Q. You didn't think about Rebecca King then, did you?

A. No. Why should I? I was thinking about who he said I had raped. That's what I was thinking about.

The defendant did not object, except, move to strike or otherwise indicate at trial that he was dissatisfied with the foregoing line of questions and answers. We have often stated that "a failure to except or object to errors at trial constitutes a waiver of the right to assert the alleged error on appeal." *State v. Oliver*, 309 N.C. 326, 334, 307 S.E. 2d 304, 311 (1983). *Accord* Rule 10, North Carolina Rules of Appellate Procedure (1985). We have emphasized that Rule 10 of the North Carolina Rules of Appellate Procedure is an important vehicle to prevent avoidable errors and the resulting unnecessary appellate review. *State v. Oliver*, 309 N.C. at 334, 307 S.E. 2d at 311. In *State v. Black*, 308 N.C. 736, 303 S.E. 2d 804 (1983), however, we indicated that in cases involving certain particularly egregious evidentiary errors, we would apply a "plain error" rule and require a new trial even though no objection or exception was made to the evidence when presented and admitted at trial. *See State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983) (same rule where error in jury instructions without objection). We have specifically stated that:

Reading the language of Rule 10(b)(1) that an exception may be properly preserved "by objection noted *or which by rule or law was deemed preserved or taken without any such action*," together with the language of *State v. Black*, 308 N.C. 736, 303 S.E. 2d 804, and *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375, we conclude as follows:

1. A party may not, after trial and judgment, comb through the transcript of the proceedings and randomly insert an exception notation in disregard of the mandates of Rule 10(b).

2. Where no action was taken by counsel during the course of the proceedings, the burden is on the party alleging error to establish its right to review; that is, that an exception, "by rule or law was deemed preserved or taken without any such action," or that the alleged error constitutes plain error.

In so doing, a party must, prior to arguing the alleged error in his brief, (a) alert the appellate court that no action was taken by counsel at the trial level, and (b) establish his right to review by asserting in what manner the exception is preserved by rule or law or, when applicable, how the error amounted to a plain error or defect affecting a substantial right which may be noticed although not brought to the attention of the trial court. We caution that our review will be carefully limited to those errors.

*State v. Oliver*, 309 N.C. at 335, 307 S.E. 2d at 311-12.

The cross-examination about which the defendant belatedly complains violated the implicit assurance contained in the *Miranda* warnings that silence will carry no penalty. The Supreme Court of the United States has made it clear that "breaching the implied assurance of the *Miranda* warnings is an affront to the fundamental fairness that the Due Process Clause requires." *Wainwright v. Greenfield*, --- U.S. ---, 88 L.E. 2d 623, 630, 54 U.S.L.W H077 (14 Jan 86) (No. 84-1480). *Accord Doyle v. Ohio*, 426 U.S. 610, 49 L.E. 2d 91 (1976). Therefore, fundamental rights of the defendant were violated by the cross-examination of the prosecutor.

We turn, then, to decide whether the defendant, having failed to object or except at trial, is entitled to any relief on appeal as a result of the error. Counsel for the defendant properly alerted this Court that no action had been taken by trial counsel concerning the offensive line of cross-examination. *State v. Oliver*, 309 N.C. at 335, 307 S.E. 2d at 312. The record fails to establish, however, any manner in which the defendant was entitled to an exception by rule of law. Therefore, the only remaining consideration is whether the offensive line of questioning "amounted to a plain error or defect affecting a substantial right which may be noticed although not brought to the attention of the trial court." *Id.* We conclude that it did not.

*Doyle* and subsequent cases by the Supreme Court of the United States have made it clear that breaching the implied assurance of the *Miranda* warnings denies due process. But neither those cases nor our own decision in *Lane* is controlling on the question of whether such conduct is "plain error" which, although not called to the attention of the trial court, entitles the defendant to a new trial. We have stated that:

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Black*, 308 N.C. 736, 740-41, 303 S.E. 2d 804, 806-07 (1983), *quoting with approval United States v. McCaskill*, 676 F. 2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L.Ed. 2d 513 (1982).

The plain error rule applies only in truly exceptional cases. Before deciding that an error by the trial court amounts to "plain error," the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. *State v. Odom*, 307 N.C. at 661, 300 S.E. 2d at 378-79. In other words, the appellate court must determine that the error in question "tilted the scales" and caused the jury to reach its verdict convicting the defendant. *State v. Black*, 308 N.C. at 741, 303 S.E. 2d at 806-07. Therefore, the test for "plain error" places a much heavier burden upon the defendant than that imposed by N.C.G.S. § 15A-1443 upon defendants who have preserved their rights by timely objection. This is so in part at least because the defendant could have prevented any error by making a timely objection. *Cf.* N.C.G.S. § 15A-1443(c) (defendant not prejudiced by error resulting from his own conduct).

Although the error in the case *sub judice* affected a fundamental right of the defendant, our required review of the entire record leads us to conclude that it was not "plain error." It appears that the prosecutor was developing the defendant's testimony and did not dwell on the fact that the defendant had not mentioned his alibi defense to the authorities following his arrest. Further, when the questions complained of were asked on cross-examination, the defendant gave answers which the jury in all probability found provided a clear, cogent and reasonable explana-

tion for his having failed to mention or "think about" Rebecca King. The defendant's answers indicated that when first informed that he was being charged with rape, he did not know when or where the crime was alleged to have taken place or the identity of the victim. Certainly the jury could have found nothing unusual in his failure to mention Rebecca King before he had such information. Nor do his other answers to this line of cross-examination appear likely to have caused him harm.

Further, the overwhelming evidence against the defendant prevented the error complained of from rising to the level of "plain error" within the meaning of *State v. Black*, 308 N.C. 736, 303 S.E. 2d 804 (1983) and *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983). The evidence that the victim had been beaten and seriously injured as well as raped was not seriously contested. The only question directly put at issue by the defendant's evidence in the form of alibi testimony was the identity of the perpetrator. In this regard, the victim's identification of the defendant was unqualified and unwavering. Two disinterested witnesses, David Soard and his niece Anita Gibson, testified that they had introduced the defendant to the victim on the night the attack upon her occurred. Gibson also testified that she saw both the defendant and the victim at a nightclub near the point where the attack occurred and during the same evening on which the attack occurred.

Given the peculiar facts of this case, we do not conclude that the error committed caused the jury to reach a different verdict than it would have reached otherwise. *See State v. Black*, 308 N.C. at 740-41, 303 S.E. 2d at 806-07. Therefore, the defendant has not carried his burden of showing "plain error." *Id.*; *State v. Oliver*, 309 N.C. at 335, 307 S.E. 2d at 311-12. We wish to emphasize to the prosecutors of this State, however, that we strongly disapprove of any such cross-examination of a defendant concerning his exercise of his post-arrest right to silence and that such tactics may often amount to "plain error" and require a new trial.

The trial of the defendant was free of reversible error.

No error.