STATE OF NORTH CAROLINA v. PAUL MICHAEL TUCKER

No. 417A85

(Filed 12 August 1986)

1. **Kidnapping § 1.2— removal from truck to commit rape—not an integral part of offense**

    The trial court properly refused to dismiss kidnapping charges for insufficient evidence where the State's evidence tended to show that defendant Tucker removed the victim from his truck and dragged her down to the river and under the bridge where he committed sexual assaults out of the view of passersby on the road; the victim sustained multiple bruises, abrasions and cuts from being dragged on her back; and those acts constituted neither a mere technical asportation nor an inherent and integral part of the rape and sex offense committed. N.C.G.S. § 14-39(a).

2. **Kidnapping § 1.3— instructions—theory not alleged in indictment—plain error**

    The trial court committed plain error in a kidnapping prosecution by instructing the jury on restraint when the indictment alleged only removal. N.C.G.S. § 14-39, N.C. Rules of App. Procedure Rule 10(b)(2).

3. **Criminal Law § 102— evidence of other crimes—improperly argued by prosecutor**

    The trial court erred in a kidnapping prosecution by overruling defendant's objection to the prosecutor's reference in his closing argument to defendant's prior crimes. The evidence of defendant's prior convictions was offered and admitted solely to impeach defendant's credibility but the main thrust of the prosecutor's argument was to show that defendant was a bad man of a violent, criminal nature and clearly more likely to be guilty of the crime charged. N.C.G.S. § 8C-1, Rule 609(a), Rule 404, N.C.G.S. § 15A-1443.

APPEAL by defendant from his conviction of first degree rape, first degree sex offense and first degree kidnapping before *Hyatt (J. Marlene), J.,* and a jury at the 11 March 1985 Criminal Session of LINCOLN County Superior Court, and his concurrent sentences therefor of life, life and twelve years, respectively. We allowed defendant's petition to bypass the Court of Appeals in the kidnapping case on 22 July 1985.

*Lacy H. Thornburg, Attorney General, by James E. Magner, Jr., Assistant Attorney General, for the state.*

*Malcolm Ray Hunter, Jr., Acting Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant appellant.*

EXUM, Justice.

In his appeal defendant contends the trial court (1) committed reversible error in failing to dismiss the kidnapping charges for insufficient evidence; (2) committed plain error in instructing the jury on a theory of kidnapping not charged in the indictment; (3) denied defendant a fair trial by overruling objections to the prosecutor's closing argument concerning defendant's prior criminal acts; and (4) committed plain error in instructing the jury that a knife is a deadly weapon. We conclude defendant's second and third contentions have merit and entitle him to a new trial. We reject contention one and find it unnecessary to discuss contention four.

I.

The state's evidence at trial tended to show: The prosecuting witness, age 47 at trial, and defendant, age 33, both of Lincolnton, became reacquainted in December 1984, having not seen each other since approximately fifteen years earlier when they had worked together in the same mill. They began seeing each other socially during late December 1984 and early January 1985, visiting in each other's and various relatives' homes, riding around in defendant's truck, visiting defendant's grandfather together in the hospital, and attending bingo games. On one of these occasions when the prosecuting witness was riding around with defendant in his truck, the two argued. Defendant forced the prosecuting witness to have sex with him and prevented her from jumping out of the truck by holding her. Defendant was not armed. The prosecuting witness did not report this attack. After that incident defendant visited the prosecuting witness at work, but she refused to leave with him. He also telephoned her and came to the house where she lived with her father and her son, but the prosecuting witness remained with her father at all times.

On 9 January 1985 defendant called the prosecuting witness at home and told her he would leave her alone if she would just talk to him. She assented, telling defendant she had to take her granddaughter to the mill where the child's mother worked. Defendant agreed to pick them up and drive them there. After making several stops they finally dropped off the child and went for something to drink. They then began arguing because the prosecuting witness did not want to see defendant any more, and defendant became angry. They drove off and defendant stopped his truck on the right side of the road near the South Side River Bridge about one-half mile from the prosecuting witness's house. The prosecuting witness told defendant she wanted to go home so she could use the bathroom. When he refused she attempted to open her door, but defendant grabbed her by the chin, pulled her back and held her, telling her "You'll do like I tell you to do, not like you want to do." He pulled her out of the truck and told her she would have to use the bathroom in the woods. Defendant then removed a silver knife from his pocket, opened it up, and said to the prosecuting witness, "I'll cut your guts out right here." He pushed the prosecuting witness down the embankment and dragged her to the river and under the bridge, where he forced her to disrobe and lie down. While holding his knife and threatening to kill her, defendant forced the prosecuting witness to perform oral sex on him before he raped her. He then repeated this sequence.

The prosecuting witness asked defendant to take her to her father's house. He refused, saying her father had a warrant out for him. She convinced defendant that if they went to Gastonia her cousin would let them both spend the night at her home, although the prosecuting witness knew that was not the case.

When they arrived at the prosecuting witness's cousin's home, her cousin, Clarice King, proposed she spend the night. Upon King's insistence defendant left. After defendant left, the prosecuting witness explained to her cousin what had happened. King informed her she would have to report the crimes in Lincoln County where they took place.

After reporting the crimes to law enforcement authorities on 11 January 1985, the prosecuting witness went to Dr. William H. Bobbitt for an examination. Dr. Bobbitt found abrasions and

bruises on her right shoulder, arm and leg and severe swelling in the opening of the vaginal area. Dr. Bobbitt diagnosed the prosecuting witness as having undergone a physical assault, probably sexual in nature. Other witnesses for the state, including the prosecuting witness's cousin Clarice King, two law enforcement officers and a magistrate, corroborated various portions of the prosecuting witness's testimony.

Defendant testified in his own defense. He acknowledged engaging in consensual vaginal and oral intercourse with the prosecuting witness on 9 January 1985. He asserted that was their third sexual encounter and described in detail the events of that night, notably the prosecuting witness's difficulty in completing the acts of vaginal intercourse. He explained that since he lived with his parents and she with her father, their assignations had to take place elsewhere. Defendant also testified he and the prosecuting witness planned to elope that night but went first to Clarice King's house to borrow money. James Heavner testified he saw the pair in defendant's truck on 9 January 1985 in the late afternoon, sitting "just as close as you want to get."

## II.

[1] Defendant first assigns error to Judge Hyatt's refusal to dismiss the kidnapping charges because of insufficient evidence of a confinement, removal or restraint separate from the sexual assaults. Our legislature has defined kidnapping as "unlawfully confin[ing], restrain[ing], or remov[ing] from one place to another, any other person 16 years of age or over without the consent of such person . . . ." N.C.G.S. § 14-39(a) (1986).

Defendant relies on *State v. Irwin*, 304 N.C. 93, 282 S.E. 2d 439 (1981), in which we held that an asportation which is an inherent and integral part of some crime for which defendant has been convicted other than the kidnapping will not support a separate conviction for kidnapping. *Irwin* involved the armed robbery of a store, during which the perpetrator forced the clerk from the front to the back of the store at knifepoint to open the safe. We held this a mere technical asportation and an inherent and integral part of the robbery which would not support a separate conviction for kidnapping. The key principle governing whether a kidnapping charge will lie, as expressed in *Irwin*, is whether "[u]nder such circumstances the victim is . . . exposed to

greater danger than that inherent in the armed robbery itself, . . . [or] is . . . subjected to the kind of danger and abuse the kidnapping statute was designed to prevent." *Irwin*, 304 N.C. at 103, 292 S.E. 2d at 446.

We find *Irwin* distinguishable. The state's evidence here tended to show defendant Tucker removed the victim from his truck and dragged her down to the river and under the bridge where he committed the sexual assaults out of the view of passersby on the road. The victim sustained multiple bruises, abrasions and cuts from being dragged on her back. These acts constituted neither a mere technical asportation nor an inherent and integral part of the rape and sex offense committed. Defendant exposed the victim to greater danger than was involved in the sexual attacks themselves by removing her some distance, injuring her in the process, and by insuring that passersby would not witness or hinder the commission of the sexual crimes. We therefore hold Judge Hyatt correctly refused to dismiss the kidnapping charges, and we overrule this assignment of error.

## III.

[2] We next consider whether Judge Hyatt committed plain error in instructing the jury on a theory of kidnapping not charged in the indictment. Insofar as the instructions given allowed the jury to convict on grounds other than those charged in the indictment, they were error. Since defendant failed to object to these instructions at trial, we consequently must consider whether they rise to the level of plain error, meriting a new trial for defendant on the kidnapping charge. We hold the instructions constituted plain error.

Defendant was tried under N.C.G.S. § 14-39 which provides, in pertinent part:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

(1) Holding such other person for ransom or as a hostage or using such other person as a shield; or

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person.

(b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class D felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.

The portion of the indictment which led to defendant's ultimate conviction of kidnapping charged as follows:

The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did kidnap [the victim], a person who had attained the age of 16 years, by unlawfully *removing her from one place to another*, without her consent, and for the purpose of facilitating the commission of the felonies of First Degree Rape and First Degree Sexual Offense. The victim . . . was sexually assaulted by the defendant.

With respect to the kidnapping charge, Judge Hyatt instructed the jury they could find defendant guilty of first degree kidnapping if they found, *inter alia*, "that the defendant unlawfully *restrained* [the victim], that is, restricted [her] freedom of movement by force and threat of force." (Emphasis supplied.)

Although the state's evidence supported Judge Hyatt's instruction, the indictment does not. "It is a well-established rule in this jurisdiction that it is error, generally prejudicial, for the trial judge to permit a jury to convict upon some abstract theory not

supported by the bill of indictment." *State v. Taylor*, 301 N.C. 164, 170, 270 S.E. 2d 409, 413 (1980); *accord, State v. Dammons*, 293 N.C. 263, 272, 237 S.E. 2d 834, 840-41 (1977). The kidnapping indictment charges that defendant committed kidnapping only by unlawfully *removing* the victim "from one place to another." Judge Hyatt repeatedly instructed the jury that defendant could be convicted if he simply unlawfully *restrained* the victim, "that is, restricted [her] freedom of movement by force and threat of force."

Our decision in *Dammons* resolves precisely this point. In *Dammons,*

[t]he trial judge repeatedly told the jury that the defendant could be found guilty if he 'confined or restrained or removed' the victim. As an abstract legal proposition the instruction is correct. There was, furthermore, evidence of confinement, restraint, and removal. The indictment, however, charged only that defendant kidnapped the victim 'by unlawfully removing her from one place to another.'

. . . Had the state desired to prosecute on the theory that defendant confined and restrained the victim . . ., it should have so alleged by way of an additional count in the indictment.

*Dammons*, 293 N.C. at 273, 237 S.E. 2d at 841.

This Court consistently has held that:

[A]n indictment charging first-degree kidnapping *must* include information 'regarding the factual basis under which the State intends to proceed and, under the authority of [*State v. Taylor*, 301 N.C. 164, 270 S.E. 2d 409 (1980)] and cases cited therein the State is limited to that factual basis at trial.' *State v. Moore*, 311 N.C. 442, 463, 319 S.E. 2d 150, 158 (1984) (Meyer, J., concurring). *See also State v. Jerrett*, 309 N.C. 239, 307 S.E. 2d 339 (1983) (indictment for kidnapping will not support conviction unless all elements of crime accurately and clearly alleged in indictment).

*State v. Brown*, 312 N.C. 237, 248-49, 321 S.E. 2d 856, 861 (1984). Our decisions in *Dammons*, *Taylor* and *Brown* control here; under them the trial court erred in its jury instructions on kidnapping.

The state argues that while the instructions may have been erroneous defendant waived appellate review on the issue by failing to interpose a timely objection. Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure provides: "No party may assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict . . . ." *Id.* This Court, however, mitigated the rule's harshness by adopting "the 'plain error' rule . . . used by the federal courts pursuant to Rule 52(b) of the Federal Rules of Criminal Procedure which states that '[p]lain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E. 2d 375, 378 (1983). "In deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *Id.* at 661, 300 S.E. 2d at 378-79. We said in *State v. Walker*, 316 N.C. 33, 340 S.E. 2d 80 (1986):

> The plain error rule applies only in truly exceptional cases. Before deciding that an error by the trial court amounts to 'plain error,' the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. *State v. Odom*, 307 N.C. at 661, 300 S.E. 2d at 378-79. In other words, the appellate court must determine that the error in question 'tilted the scales' and caused the jury to reach its verdict convicting the defendant. *State v. Black*, 308 N.C. [736] at 741, 303 S.E. 2d [804] at 806-07. Therefore, the test for 'plain error' places a much heavier burden upon the defendant than that imposed by N.C.G.S. § 15A-1443 upon defendants who have preserved their rights by timely objection. This is so in part at least because the defendant could have prevented any error by making a timely objection. *Cf.* N.C.G.S. § 15A-1443(c) (defendant not prejudiced by error resulting from his own conduct).

316 N.C. at 39, 340 S.E. 2d at 83-84.

*State v. Brown*, 312 N.C. 237, 321 S.E. 2d 856, strongly supports the proposition that the erroneous jury instructions in this case constituted plain error. *Brown* was a kidnapping case in which the trial court instructed the jury on theories of conviction not charged in the indictment. The Court concluded that the instructions were not only error, but were plain error, saying:

In conclusion, the judge's instructions permitted the jury in this case to predicate guilt on theories of the crime which were not charged in the bill of indictment and which were, in one instance, not supported by the evidence at trial. We therefore hold that under the factual circumstances of this case, there was 'plain error' in the jury instructions as that concept was defined in *Odom* and defendant must therefore receive a new trial on the first-degree kidnapping charge.

312 N.C. at 249, 321 S.E. 2d at 861. It is true that in *Brown* one of the theories submitted was supported by neither the evidence nor the indictment. Nevertheless, it would be difficult to say that permitting a jury to convict a defendant on a theory not legally available to the state because it is not charged in the indictment or not supported by the evidence is not plain error even under the stringent test required to invoke that doctrine. In light of the highly conflicting evidence in the instant kidnapping case on the unlawful removal and restraint issues, we think the instructional error might have, as we said in *Walker*, " 'tilted the scales' and caused the jury to reach its verdict convicting the defendant." Defendant must, therefore, receive a new trial on the kidnapping charge for plain error in the jury instructions.

IV.

[3] Defendant next contends he was denied a fair trial because the trial court overruled his objections to the prosecutor's closing argument. We agree with defendant on this issue, and therefore grant him a new trial on all remaining charges as well.

Judge Hyatt overruled defendant's objection to the following portion of the prosecutor's closing argument:

She could have fought him under the bridge, and they would have found her corpse. He would have cut her guts out like he threatened to do. And I believe this past history would show that he would. He has admitted on the stand this is a man of violence. This is a woman abuser. This man cannot understand anything but force. He does not understand authority. He has no respect for people's property. He stole someone's car. He went to prison. He did not understand that authority. He admitted he escaped twice. Can you believe this man? He escaped from that authority. Then what does

he do? In 1973. Can you believe a man who would do this in this type of case in 1973 by forcing with a razor, took [another victim] and kidnapped her and kept her in the woods several days.

MR. LAFFERTY: Objection, Your Honor.

MR. RANDALL: Can you believe this man?

THE COURT: Overruled.

She similarly overruled defendant's subsequent objections to the following closing statements by the prosecutor:

If she had fought him all the way, they would have found her under the bridge dead at the hands of Paul Michael Tucker, a confessed kidnapper, with a knife. He used a razor the other time.

MR. LAFFERTY: Objection.

MR. RANDALL: Can you believe that story?

THE COURT: Overruled.

. . . .

Or believing a man who is a confessed kidnapper, charged again with kidnapping thirty-two days after he gets out of prison. Charged with kidnapping in the same method that he had confessed to before. By putting a razor to a girl's throat, and a knife.

MR. LAFFERTY: Objection.

THE COURT: Overruled.

. . . .

Now, if she was sexually assaulted let's back up. Who did it? Paul Michael Tucker. Where did he do it? Under the bridge at South Side. How did he do it? With a knife. Why did he do it? He had done it before.

MR. LAFFERTY: Objection.

MR. RANDALL: That is the life of Paul Michael Tucker.

THE COURT: Overruled.

On direct examination defendant admitted he had been convicted of temporary taking of an auto, two prison escapes and kidnapping. During cross-examination the prosecutor sought to introduce more detailed information regarding defendant's prior criminal offenses:

> I will ask you if this is not the girl that you kidnapped in early July of 1973 and stayed out with her, kept her out against her will for four days?
>
> A. I was convicted of it.
>
> Q. You say you do not recognize her now?
>
> A. It has been eleven and a half years.
>
> Q. I will ask you in that time when you kidnapped this lady that the way you kidnapped her was you held her by the chin and held a razor to her throat. Wasn't that what you pled guilty to, and took her against her will and kept her for four days in the woods down there?
>
> MR. LAFFERTY: Objection, Your Honor.
>
> THE COURT: On what grounds?
>
> MR. LAFFERTY: I would like to be heard, if I could.
>
> THE COURT: Out of the jury's presence?
>
> MR. LAFFERTY: Yes.

After the ensuing discussion covering six pages in the transcript, Judge Hyatt ruled that under Rule 609 of the North Carolina Rules of Evidence[1] "the defendant may be asked about prior convictions to the extent of what is established by the public record, but what is not established by the public record may not be inquired into at this point in time." Thereafter, defendant responded affirmatively to the following query posed by

---

1. Rule 609(a) of the North Carolina Rules of Evidence provides:

"For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime punishable by more than 60 days confinement shall be admitted if elicited from him or established by public record during cross-examination or thereafter."

N C.G.S. § 8C-1, Rule 609(a) (1986).

the prosecutor, which ended the questioning on this topic: "Mr. Tucker, in 1973, you pled guilty to kidnapping this lady on a bill of indictment that charged that you kidnapped her by force and by placing a razor against her throat; is that correct?"

On appeal, defendant argues the prosecutor's jury argument materially misstated the evidence and urged the jury to consider as substantive evidence testimony admitted only for impeachment purposes. The state urges this Court to hold the prosecutor's argument proper because it was based on evidence of defendant's other crimes admissible to show intent, motive, opportunity, plan and knowledge, under Rule 404 of the North Carolina Rules of Evidence.

Defendant's argument is well taken, as the impropriety of the prosecutor's argument is apparent. The evidence of defendant's past convictions was offered and admitted solely to impeach defendant's credibility. This was the only legitimate purpose for which the evidence was admissible. Yet the prosecutor went far beyond using this evidence for purposes of challenging defendant's credibility. He used defendant's prior convictions primarily to characterize him as a woman abuser, a person of violence who understands nothing but force, and one who has no respect for authority or the property of others. Although the prosecutor occasionally interjected "Can you believe this man," the argument's main thrust is to show defendant is a bad man of a violent, criminal nature and clearly more likely to be guilty of the crime charged. The prosecutor alluded to the fact that defendant was charged with kidnapping by the same method as before and stated defendant did it this time because he had done it before. He concluded with "That is the life of Paul Michael Tucker." Thus the prosecutor improperly argued that evidence admissible only to impeach defendant's credibility should be considered as substantive evidence that he committed the crimes of which he is charged herein.

This Court made it clear in the landmark decision of *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954), that generally in a

prosecution for a particular crime, the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense. . . .

The general rule rests on these cogent reasons: (1) 'Logically, the commission of an independent offense is not proof in itself of the commission of another crime.' *Shaffner v. Commonwealth*, 72 Pa. 60, 13 Am. R. 649; *People v. Molineux*, 168 N.Y. 264, 61 N.E. 286, 62 L.R.A. 193. (2) Evidence of the commission by the accused of crimes unconnected with that for which he is being tried, when offered by the State in chief, violates the rule which forbids the State initially to attack the character of the accused, and also the rule that bad character may not be proved by particular acts, and is, therefore, inadmissible for that purpose. *State v. Simborski*, 120 Conn. 624, 182 A. 221; *State v. Barton*, 198 Wash. 268, 88 P. 2d 385. (3) 'Proof that a defendant has been guilty of another crime equally heinous prompts to a ready acceptance of and belief in the prosecution's theory that he is guilty of the crime charged. Its effect is to predispose the mind of the juror to believe the prisoner guilty, and thus effectually to strip him of the presumption of innocence.' *State v. Gregory*, 191 S.C. 212, 4 S.E. 2d 1. (4) 'Furthermore, it is clear that evidence of other crimes compels the defendant to meet charges of which the indictment gives him no information, confuses him in his defense, raises a variety of issues, and thus diverts the attention of the jury from the charge immediately before it. The rule may be said to be an application of the principle that the evidence must be confined to the point in issue in the case on trial.'

240 N.C. at 173-74, 81 S.E. 2d at 365-66.

Although it was proper to cross-examine defendant concerning his prior convictions on the question of his credibility, these convictions were not admissible as substantive evidence tending to prove his guilt. It was error for the trial court to permit the prosecutor to argue as if they were.

The state's evidence tended to prove defendant's guilt of all crimes, but defendant's evidence tended to show his innocence. The conflict should have been determined by the jury free from the state's argument which gave force to the evidence of defendant's prior convictions beyond that permitted by the law. In light of the sharp evidentiary conflict, we conclude there "is a reasonable possibility that, had the error in question not been

committed, a different result would have been reached at" trial. N.C.G.S. § 15A-1443 (1983). Defendant, consequently, must be given a new trial on all charges.

Inasmuch as defendant's remaining assignment of error is directed to an instruction which may not occur on retrial, we decline to address it.

For the reasons given we conclude there must be a

New trial.