STATE OF NORTH CAROLINA
v.
CLINT RYAN VLAHAKIS
No. COA08-1299.
Court of Appeals of North Carolina.
Filed: August 4, 2009.
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Amy C. Kunstling, for the State.
Richard G. Roose for defendant-appellant.
HUNTER, JR., Robert N., Judge.
Defendant, after being found guilty of felony child abuse, appeals his conviction on fatal variance grounds that the acts charged in the indictment differed materially from the trial court's jury instructions. We find no error.

I. Background
Defendant and his ex-wife, "Ms. Frank" (hereinafter family members will be referred to by pseudonyms to protect minors' anonymity), were married in 1994. Three children were born of the marriage, one son, "Billy," aged ten at the time of trial, and two daughters, "Connie" and "Amy," aged nine and eight at the time of trial, respectively. Following her divorce from defendant in 2000, Ms. Frank and the three children moved to Jacksonville to live with Ms. Frank's parents, the "Olsens." Over the next seven years, the children made only a handful of weekend visits to see defendant at his mother's residence.
On the evening of 17 November 2006, Amy, Billy, and Connie were at the Olsens' home waiting for defendant to pick them up for a visit. When Mrs. Olsen told them they were going to see their father, Amy (then six years old) began to cry and said she did not want to go. Mrs. Olsen then asked Amy why she did not want to visit her daddy, and Amy said defendant "did this to me," pointed to her vagina, and moved her hand and finger back and forth between her legs. Shortly thereafter Amy used the same hand motions to demonstrate to Mr. Olsen and Ms. Frank how defendant touched her. Mrs. Olsen also asked Billy if he knew what had happened to Amy. He said that his daddy did not love him and Connie the way he loved Amy and that defendant had touched Amy's private area "under the blanket."
Later in the evening of 17 November 2006, Ms. Furman from the Department of Social Services ("DSS") arrived at the Olsen residence in response to a report of defendant's misconduct. Ms. Furman talked with all members of the household, including Amy. Ms. Furman also later spoke to defendant, who denied molesting his daughter.
On 22 December 2006, the Onslow County Magistrate issued a warrant for defendant's arrest. Defendant remained incarcerated continuously from the date of his arrest until 13 May 2008, the date of trial. While incarcerated, defendant mailed a letter to DSS dated 22 January 2007. In part, he wrote that
[m]y depression has taken over my life. I need major help. . . . [P]lease help me. If I cannot be around my kids I wish not to live anymore. . . . If my child say I did it to her, so be it. I done it. I trust my kids more than I trust myself.
On 13 March 2007, an Onslow County grand jury indicted defendant on charges of felony child abuse by a sexual act. The indictment reads as follows:
The jurors for the State upon their oath present that on or about the date of offense shown and in Onlsow County the defendant named above unlawfully, willfully and feloniously did commit a sexual act, digital penetration of the vagina and rectum, upon [Amy], who was 6 years of age and thus under 16 years of age. At the time the defendant committed the offense, the defendant was the parent of the child.
At trial, Amy testified that while she and defendant were on the bed together, he touched her "in a bad way" and did so on more than one occasion. Amy also indicated that defendant touched her where she "go[es] to the potty" under her clothing, put his finger into her private area, moved his finger, and told her to keep it a secret.
Ms. Furman, who had gained experience interviewing children and victims of child abuse in her job as on-call social worker testified that she "had a pretty good rapport" with Amy, but when they "started talking about specifics, [Amy] appeared uncomfortable." Amy told Ms. Furman that her daddy, the defendant, "gave her a private touch" and that "he always does this to her. . . underneath all of her clothes. And that he puts his finger up inside of her to do that and it hurts."
Billy corroborated Amy's testimony at trial. Billy testified, among other things, that he saw defendant "put his hand under the blankets and went into Amy's privacy." In addition, Mrs. Olsen detailed the descriptions and manual demonstrations of defendant's misconduct that Amy conveyed to her on 17 November 2006.
Defendant pled not guilty and testified in his own defense. Defendant testified that he has been diagnosed with depression, anxiety, epilepsy, short-term memory loss, and "the opposite of bipolar." As an apparent result of these conditions, defendant has a history of being heavily medicated. He claimed "to do things I do not know that I am doing" as a specific symptom of his short-term memory loss. Defendant has also attempted suicide three times.
On 9 May 2008, at the close of trial, the court conferred with both sides' counsel regarding the jury instructions, which were identical to the North Carolina Pattern Jury Instructions. Defendant approved of the instructions as presented.
On 12 May 2008, a jury found defendant guilty of felony child abuse by a sexual act. Defendant was sentenced to 29-44 months' imprisonment. Defendant now argues for the first time on appeal that there was a fatal variance between the indictment and the jury instructions given at trial.

II. Standard of Review
Because defendant waived objections at trial, we review the jury instructions given by the trial court for plain error. N.C. R. App. P. 10(c)(4) (2009). "Before deciding that an error by the trial court amounts to `plain error,' the appellate court must be convinced that absent the error the jury probably would have reached a different verdict." State v. Walker, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986). Furthermore,
the plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has "`resulted in a miscarriage of justice or in the denial to appellant of a fair trial'" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."
State v. Black, 308 N.C. 736, 740-41, 303 S.E.2d 804, 806-07 (1983) (quoting United States v. McCaskill, 676 F.2d 995, 1002 (4th Cir.), cert. denied, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)).

III. Fatal Variance
N.C. Gen. Stat. § 14-318.4(a2) provides the two essential elements for felony child abuse: "[1] any parent or legal guardian of a child less than 16 years of age, [2] who commits or allows the commission of any sexual act upon a juvenile is guilty of a Class E felony." N.C. Gen. Stat. § 14-318.4(a2) (2007). The indictment in this case, see ante, contains the two statutory elements together with the child's name and the manner in which the abuse was committed. Nonetheless, defendant argues that the trial court committed plain error by submitting instructions to the jury on a different theory of guilt than charged in the indictment. We find no error.
The trial court gave the following jury instructions on the offense of felony child abuse by a sexual act:
The Defendant has been charged with felonious child abuse by a sexual act. For you to find the Defendant guilty of this offense the State must prove three things beyond a reasonable doubt. First, that the Defendant was the parent of the child. Second, that at the time that child had not yet reached her 16th birthday. And third, that the Defendant committed a sexual act upon that child. A sexual act is an immoral, improper, or indecent touching by the Defendant upon the child.
If you find from the evidence beyond a reasonable doubt that on or about the alleged date the Defendant was the parent of the child and that child had not reached her 16th birthday, and that the Defendant committed a sexual act upon the child, it would be your duty to return a verdict of guilty. If you do not so find or have a reasonable doubt as to one or more of these things it would be your duty to return a verdict of not guilty.
Defendant argues that the jury instructions given at trial were erroneous because the indictment alleged that defendant "feloniously did commit a sexual act, digital penetration of the vagina and rectum," while the instructions defined sexual act as "an immoral, improper, or indecent touching." "It is a well-established rule in this jurisdiction that it is error, generally prejudicial, for the trial judge to permit a jury to convict upon some abstract theory not supported by the bill of indictment." State v. Taylor, 301 N.C. 164, 170, 270 S.E.2d 409, 413 (1980).
The sole case defendant relies on, State v. Tucker, 317 N.C. 532, 346 S.E.2d 417 (1986), is readily distinguishable. In Tucker, the indictment alleged that the defendant kidnapped the victim by "removing" her from one place to another, but the trial court instructed the jury that it could find the defendant guilty of kidnapping if it found the defendant had "restrained" the victim. Id. at 536-40, 346 S.E.2d at 420-22. Our Supreme Court held that it was plain error for the trial court to instruct the jury on a different theory of kidnapping (restraint) than was alleged in the indictment (removal). Id.
Defendant's reliance on Tucker is misplaced because under the kidnapping statute, the crime may be proven using the alternative theories of confinement, restraint, or removal of the victim. See N.C. Gen. Stat. § 14-39(a) (2007). By instructing the jury on restraint, the trial court in Tucker instructed the jury on a different theory of kidnapping than the removal theory alleged in the indictment. Tucker, 317 N.C. at 538, 346 S.E.2d at 421. In contrast, pursuant to N.C. Gen. Stat. § 14-318.4(a2), felony child abuse by a sexual act may only be proven by a single theory: that defendant committed a sexual act against the victim. See N.C. Gen. Stat. § 14-318.4(a2). The trial court in the present case properly instructed the jury on the same theorycommission of a sexual actas was alleged in the indictment.
An indictment for a statutory offense is generally sufficient if it charges the offense in the language of the statute. State v. Stokes, 174 N.C. App. 447, 452, 621 S.E.2d 311, 315 (2005). An indictment only has to allege the ultimate facts that constitute the elements of the criminal offense; it does not have to allege evidentiary matters. State v. Blackmon, 130 N.C. App. 692, 698-99, 507 S.E.2d 42, 46-47, cert. denied, 349 N.C. 531, 526 S.E.2d 470 (1998). "`Allegations beyond the essential elements of the crime sought to be charged are irrelevant and may be treated as surplusage.'" State v. Westbrooks, 345 N.C. 43, 57, 478 S.E.2d 483, 492 (1996) (quoting State v. Taylor, 280 N.C. 273, 276, 185 S.E.2d 677, 680 (1972)).
In State v. Bollinger, __ N.C. App. __, 665 S.E.2d 136, 138 (2008), aff'd, 363 N.C. 251, 675 S.E.2d 333 (2009), the indictment alleged that defendant committed the crime of carrying a concealed weapon and described the weapon as "a metallic set of knuckles." Evidence at trial showed defendant carried knives in addition to metallic knuckles. Id. at __, 665 S.E.2d at 140. Like the indictment, the trial court's jury instructions correctly stated the elements of the crime, but varied in that the concealed weapon was described only as "one or more knives." Id. at __, 665 S.E.2d at 138. There was no mention in the instructions of "metallic knuckles." Id. The defendant's sole argument on appeal was that the trial court committed error by entering judgment in spite of the variance between the description of the concealed weapon in the indictment and the jury instructions. Id.
In Bollinger, this Court found that the act of carrying a concealed weapon is the "gist of the offense" and that the difference in the type of weapon carried is inconsequential. Id. at __, 665 S.E.2d at 140. As a result, we held that the "metallic knuckles" language in the indictment was not an essential element of the crime and that the language was "mere surplusage." Id. Furthermore, we held that the discrepancy was
inadvertent and did not affect the burden of proof required of the State or constitute a substantial change or variance from the indictment. [T]here is no reasonable possibility that a different result would have been reached had the trial court's error not been committed, the error was harmless beyond a reasonable doubt.
Id.; see also State v. Pickens, 346 N.C. 628, 646, 488 S.E.2d 162, 172 (1997) (holding that the variance between indictment alleging defendant fired a shotgun and evidence showing that defendant fired a handgun is not fatal and is "mere surplusage" for the crime of discharging a firearm).
As previously stated, the essential elements of felony child abuse by a sexual act are: (1) the defendant must be a parent or guardian of a child less than 16 years of age, and (2) the defendant must have committed or allowed any sexual act upon the child. See N.C. Gen. Stat. § 14-318.4(a2) (emphasis added). In Bollinger, the gist of the offense charged was carrying a concealed weapon; the specific type of weapon actually carried was considered surplusage because the type of weapon was not an essential element of the crime. Bollinger, __ N.C. App. at __, 665 S.E.2d at 138. The gist of the crime in the present case is the abuse rendered when "any sexual act" is committed upon a child. Consequently, the language used to describe how defendant committed the sexual act is not an essential element of the crime charged. Therefore, said language in both the indictment and the jury instructions is surplusage and should be considered irrelevant.
In addition, the great weight of the evidence here indicates that the discrepancy between the indictment and the jury instructions was inadvertent and harmless beyond a reasonable doubt. Defendant has not shown plain error because the alleged error in the jury instructions did not tilt the scales and cause the jury to reach its verdict. In contrast, evidence at trial unequivocally showed that defendant committed a sexual act upon his then six-year-old daughter. Amy testified at trial how defendant touched the inside and outside of her private area. Amy's brother, Billy, corroborated Amy's experience during his testimony at trial. Billy said defendant "put his hand under the blankets and went into Amy's privacy." Mrs. Olsen and Ms. Furman both detailed the descriptions and manual demonstrations of defendant's misconduct that Amy conveyed to them on 17 November 2006. In particular, Ms. Furman recounted that Amy said defendant "gave her a private touch" and that "he always does this to her . . . underneath all of her clothes. And that he puts his finger up inside of her to do that and it hurts." Defendant confirmed his daughter's allegations when he wrote in a letter to DSS that "[i]f my child said what I did to her, so be it. I done it[.]"
In the face of such evidence, defendant has failed to show that "absent the error the jury probably would have reached a different verdict." Walker, 316 N.C. at 39, 340 S.E.2d at 83. Because both the indictment and jury instructions properly identified the conduct that constituted the essential elements of felony child abuse, the slight variance in the language used to describe the sexual act had no impact whatsoever on the jury verdict.
Defendant did not object at trial to the jury instructions as given, and there is nothing on the record to suggest defendant was convicted of some "abstract theory not supported by the bill of indictment." Taylor, 301 N.C. at 170, 270 S.E.2d at 413. Defendant has an "exceptional" burden meeting the plain error standard. Unfortunately, defendant failed to show that the discrepancy between the indictment and the jury instructions was a "'fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.'" Black, 308 N.C. at 740-41, 303 S.E.2d at 806-07 (quoting McCaskill, 676 F.2d at 1002). Therefore, we hold that the trial court did not err by presenting the jury instructions as written. No error.
No error.
Judge JACKSON concurs.
Judge WYNN concurs in the result with a separate opinion. Report per Rule 30(e).
WYNN, Judge, concurring in result.
I concur in that part of the majority opinion holding that "the great weight of the evidence here indicates that the discrepancy between the indictment and jury instructions was inadvertent and harmless beyond a reasonable doubt."