IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-86

No. 184A20

Filed 13 August 2021

STATE OF NORTH CAROLINA

v.

FABIOLA ROSALES CHAVEZ

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 270 N.C. App. 748 (2020), finding no error in part, vacating and new trial in part, and remanding a judgment entered on 29 November 2018 by Judge Joseph N. Crosswhite in Superior Court, Mecklenburg County. Heard in the Supreme Court on 18 May 2021.

*Joshua H. Stein, Attorney General, by Asher Spiller, Assistant Attorney General, for the State-appellant.*

*Marilyn G. Ozer for defendant-appellee.*

BARRINGER, Justice.

¶ 1   Defendant was convicted of attempted first-degree murder, conspiracy to commit first-degree murder, and assault with a deadly weapon with intent to kill inflicting serious injury. Defendant appealed to the Court of Appeals, which held in a divided opinion, as relevant to this appeal, that the trial court committed plain error by incorrectly instructing the jury on the conspiracy to commit first-degree murder

charge.[1] *State v. Chavez*, 270 N.C. App. 748, 761–62 (2020). The dissent disagreed, concluding, among other things, that defendant "cannot carry her burden to show any prejudice under the standard of review of plain error to warrant a new trial." *Id.* at 771 (Tyson, J., dissenting). After careful review, we reverse the decision of the Court of Appeals as to this issue. As to the other issues which were not brought forward to this Court, the decision of the Court of Appeals remains undisturbed.

## I.    Factual and Procedural Background

¶ 2        Hugo Avila Martinez (Martinez)[2] was renting an apartment to defendant until he told her to leave on 21 August 2016 due to defendant "having problems with rent." Following Martinez's conversation with defendant, defendant slapped him in the face, and Martinez filed a police report. Despite the altercation that occurred, Martinez allowed defendant to remain in the apartment. Martinez later evicted defendant sometime before 21 September 2016.

¶ 3        On 21 September 2016, defendant, along with Carlos Manzanares (Manzanares)[3] and an unidentified man, broke into Martinez's home. Defendant was

---

[1] The Court of Appeals also found no error related to issues of ineffective assistance of counsel and supposed hearsay. Neither of these issues were raised in the appeal to this Court.

[2] The Court of Appeals' opinion lists the victim's name as Roberto Hugo Martinez but the warrants, indictment, and his statement to police lists his name as Hugo Avila Martinez. We will refer to the victim as the name recorded in those documents.

[3] Although Maria Navarro, one of the State's main witnesses, referred to Manzanares throughout her testimony as the "man in the yellow shirt" and the "guy that stayed," she positively identified the person depicted in the State's Exhibit 8 as the "man in the yellow shirt," which was confirmed to be a photograph of Manzanares by the responding police.

armed with a machete while the two other men were armed with a hammer. When the defendant and the two men entered Martinez's house, Martinez was asleep in his bed with his girlfriend, Maria Navarro (Navarro) and her 16-month-old baby. Navarro testified that the three perpetrators entered Martinez's bedroom and defendant immediately announced to Martinez that, "Nobody makes fun of me, and I'm here to kill you." Martinez got up from the bed and asked defendant "what's wrong with you?" Defendant then threw the machete at Martinez and Martinez attempted to defend himself. Manzanares and the other man then proceeded to beat Martinez and continually struck him in the head with the machete and the hammer.

¶ 4        Navarro further testified that while Manzanares and the other man were beating Martinez, defendant told Navarro that she was going to kill Navarro and Navarro's baby. Defendant retrieved the machete and began attacking Navarro and her baby with the machete. Navarro was cut several times trying to protect her baby. Defendant also hit Navarro in the head with the hammer. After beating Martinez unconscious and seeing that defendant was attacking Navarro, Manzanares detained defendant and instructed Navarro to grab her baby and leave or else defendant would kill her.

¶ 5        After Navarro was able to escape from defendant, she called 9-1-1. Defendant and Manzanares followed Navarro. Once they caught up with Navarro, defendant instructed Manzanares to kill Navarro for calling the police. However, after

Manzanares could not find Navarro's cellphone to verify whether she had called the police, defendant continued to grab and pull Navarro while saying "I'm going to kill you." Manzanares intervened, saying "no you're not going to [kill Navarro] . . . you're not going to do that because you told me, we were here for something else," which then led defendant to abandon her attempt to kill Navarro and Navarro's baby. Defendant fled the scene by way of a nearby pedestrian path. The responding police officer testified that when he arrived on the scene, he found Navarro "covered in blood" and Martinez unresponsive with a "heavy laceration to his head."

¶ 6        On 3 October 2016, defendant was indicted on two counts of attempted first-degree murder, one count of conspiracy to commit first-degree murder, two counts of assault with a deadly weapon with intent to kill inflicting serious injury, and one count of first-degree burglary. On 26 November 2018, the State dismissed one count of attempted first-degree murder, the first-degree burglary charge, and one count of assault with a deadly weapon with intent to kill inflicting serious injury. Defendant was subsequently found guilty of attempted first-degree murder, conspiracy to commit first-degree murder, and assault with a deadly weapon with intent to kill inflicting serious injury. Defendant gave oral notice of appeal.

¶ 7        Before the Court of Appeals, defendant argued that the trial court "(1) erred by denying [d]efendant's motion to dismiss the conspiracy charge; (2) plainly erred by instructing the jury, and accepting its verdict of guilty, on the offense of conspiracy

to commit first-degree murder; and (3) plainly erred by admitting hearsay evidence that violated [d]efendant's right to confrontation." *Chavez*, 270 N.C. App. at 751. The Court of Appeals rejected defendant's arguments as to issues one and three, *id.* at 763–64, but in a divided opinion concluded that the trial court plainly erred by instructing the jury on the conspiracy to commit first-degree murder charge, *id.* at 761−62. The majority reasoned that because the indictment "named only Manzanares as [d]efendant's co-conspirator," the evidence presented at trial supported a finding that [d]efendant conspired with Manzanares and another unidentified male." *Id.* at 760. However, the jury instructions instructed that a conspiracy could be found if "the defendant and *at least one other person* entered into an agreement," *id.* at 760. Accordingly, the majority held that "[d]efendant's fundamental right to be informed of the accusations against [her]" was violated. *Id.* at 761 (citing N.C. Const. Art. I, sec. 23).

¶ 8        In contrast, the dissent reasoned that "[d]efendant does not and cannot show 'that the erroneous jury instruction was a fundamental error—that the error had a probable impact on the jury verdict' and was so prejudicial to be awarded a new trial." *Id.* at 767 (Tyson, J., dissenting) (quoting *State v. Lawrence*, 365 N.C. 506, 518 (2012)). The dissent asserted that not only did the majority fail to conduct a prejudice analysis, but defendant cannot demonstrate prejudice based on the "overwhelming and uncontroverted evidence" against her. *Id.* at 768 (Tyson, J., dissenting).

¶ 9    The State appealed pursuant to N.C.G.S. § 7A-30(2) (2019). Based on the dissent, the State raised one issue on appeal to this Court: "[d]id the Court of Appeals err in granting defendant a new trial on the charge of conspiracy to commit murder based on an instructional error where there was overwhelming evidence of defendant's guilt?" The alleged error was that "the trial court . . . failed to identify [d]efendant's co-conspirator by name in the jury instructions."

¶ 10    At trial, the jury was instructed as follows, and without objection from defendant:

> The defendant has been charged with conspiracy to commit murder. For you to find the defendant guilty of this offense, the State must prove three things beyond a reasonable doubt. First; that the defendant and at least one other person entered into an agreement. Second; that the agreement was to commit murder. Murder is the unlawful killing of another with malice. And third; that the defendant and at least one other person intended that the agreement be carried out at the time it was made. The State is not required to prove that the murder was committed.

The majority in the Court of Appeals concluded that the jury instructions were "not in accord, with both the indictment and evidence presented at trial, and thus the trial court's instruction was error." *Chavez*, 270 N.C. at 761 (cleaned up).

## II.    Standard of Review

¶ 11    If in a criminal case an issue was not preserved by objection at trial and was not deemed preserved by rule or law the unpreserved error is reviewed only for plain

error. *See* N.C. R. App. P. 10(a)(4). To obtain plain error review, a "defendant must specifically and distinctly contend that the alleged error constitutes plain error. Furthermore, plain error review in North Carolina is normally limited to instructional and evidentiary error." *State v. Lawrence*, 365 N.C. 506, 516 (2012). (cleaned up). Defendants "bear the heavier burden of showing that [an] error rises to the level of plain error." *Id*

> [T]he plain error rule ... is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "*fundamental error*, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or " where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*Lawrence,* at 516–17 (alterations in original) (quoting *State v. Odom*, 307 N.C. 655, 660–61).

### III.    Analysis

The issue before us on appeal is whether the Court of Appeals erred by not conducting a prejudice analysis after finding the trial court erred in its instruction as to the charge of conspiracy for first-degree murder and whether if such analysis occurred, can defendant show prejudice considering the overwhelming and

uncontroverted evidence against her. Upon careful review of this case, we conclude that defendant has failed to demonstrate prejudice because the State presented overwhelming and uncontroverted evidence of defendant's guilt at trial. Accordingly, the Court of Appeals erred by failing to perform the required prejudice analysis required for plain error review.

Where there is highly conflicting evidence in a case, an error in the jury instructions *may* tilt the scales and cause the jury to convict a defendant. *See State v. Tucker*, 317 N.C. 532, 540 (1986) (emphasis added). In situations where the instructional error had a probable impact on the jury's finding that the defendant was guilty, a defendant can show plain error. *See id.* In contrast, where the evidence against a defendant is "overwhelming and uncontroverted[, a] defendant cannot show that, absent the error, the jury probably would have returned a different verdict." *Lawrence*, 365 N.C. at 519.

Defendant cannot show plain error because the evidence presented by the State that defendant formed a conspiracy with Manzanares to commit first-degree murder was overwhelming and uncontroverted.

> A criminal conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means. To constitute a conspiracy[,] it is not necessary that the parties should have come together and agreed in express terms to unite for a common object: A mutual, implied understanding is sufficient, so far as the combination or conspiracy is concerned, to constitute the offense. The conspiracy is the

> crime and not its execution. Therefore, no overt act is necessary to complete the crime of conspiracy. As soon as the union of wills for the unlawful purpose is perfected, the offense of conspiracy is completed.
>
> . . . The existence of a conspiracy may be established by direct or circumstantial evidence. . . . However, direct proof of the charge [conspiracy] is not essential and for such is rarely obtainable. It may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy.

*State v. Gibbs*, 335 N.C. 1, 47–48 (1993) (cleaned up).

Based on Navarro's uncontroverted testimony, defendant and Manzanares arrived at Martinez's apartment together in the middle of the night, awakening Martinez and Navarro. After defendant, armed with a machete, declared "I'm here to kill you" and threw the machete at Martinez, Manzanares began hitting and kicking Martinez, rendering Martinez unable to defend himself. Shortly thereafter, Manzanares began using a hammer to repeatedly hit Martinez in the head. Navarro escaped from the house, but both defendant and Manzanares eventually caught up with her. Furthermore, after Manzanares and defendant tracked down Navarro with her baby outside and defendant told Navarro she was going to kill her and Navarro's child, Manzanares told defendant that he would not let defendant kill Navarro because defendant had told him that that they were there for "something different" and Manzanares stated he was "not going to mess with a mother and a child." Given the overwhelming evidence of a conspiracy between defendant and Manzanares to

kill Martinez, we conclude there is not a reasonable probability that the jury would have returned a different verdict had Manzanares been identified in the jury instructions as defendant's co-conspirator rather than a mere instruction that an agreement must be reached with at least one other person. *See State v. Fletcher*, 370 N.C. 313, 325 (2017) (" '[I]n giving jury instructions,' however, 'the court is not required to follow any particular form,' as long as the instruction adequately explains 'each essential element of the offense.' ") (quoting *State v. Walston*, 367 N.C. 721, 731 (2014)).

¶ 16        Moreover, the State's evidence focused on defendant and Manzanares's interactions and their agreement to murder Martinez. The State's closing argument also focused entirely on establishing that defendant conspired with Manzanares. The State argued to the jury during closing arguments that "defendant and at least one other person entered into an agreement. In this case that's [Manzanares], the guy in the yellow shirt. That the agreement was to commit murder." The State later reiterated that defendant "formed an agreement with at least one person, that guy (indicating image of [Manzanares] on screen), to kill [Martinez]." This further supports that there is not a reasonable probability that the jury would have returned a different verdict had Manzanares been identified in the jury instructions as defendant's co-conspirator.

## IV. Conclusion

To demonstrate that a trial court committed a plain error, a defendant must show "that after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.' " *Lawrence*, 365 N.C. at 518 (quoting *Odom*, 307 N.C. at 660). In this case, given that the evidence of defendant's guilt of the conspiracy to commit first-degree murder charge was "overwhelming and uncontroverted," *id*. at 519, defendant cannot show that the error had a probable impact on the jury's finding that she was guilty. Accordingly, we reverse the decision of the Court of Appeals. As to the other issues which were not brought forward to this Court, the decision of the Court of Appeals remains undisturbed.

REVERSED.