STATE OF NORTH CAROLINA v. RAPHEAL DWAYNE McEACHIN

No. COA00-144

(Filed 6 February 2001)

**1. Homicide— first-degree murder—sufficiency of evidence**

The trial court properly denied defendant's motion to dismiss a charge of first-degree murder (which resulted in a second-degree murder conviction) where the defendant retrieved a gun from a vehicle and said he would kill the group with whom the victim was walking; defendant subsequently said that he thought he "got one" because he had "seen one drop"; eleven spent shell casings were recovered at the scene and matched a gun used by defendant; defendant admitted firing shots into the air until the gun was emptied; victim identified defendant as the person who shot him; and the victim died of a gunshot wound to the head.

**2. Evidence— witness's prior conviction—not probative of truthfulness—introduction not plain error**

There was no plain error in a murder prosecution where evidence was introduced concerning a defense witness's pending burglary charge which was not probative of the witness's propensity for truthfulness or untruthfulness, but did not have a probable impact on the jury's determination of the witness's truthfulness because the State presented evidence that the witness had previously been convicted of burglary and the witness testified that he had consumed 4 forty-ounce beers on the evening of the shooting.

**3. Criminal Law— prosecutor's argument—defendant's prior convictions**

The trial court's failure to intervene ex mero motu in one instance and to grant an objection in another in the prosecutor's closing argument in a murder prosecution did not result in prejudicial error where defendant had testified on cross-examination that he had been convicted of voluntary manslaughter and the prosecutor argued that defendant had killed before. Such evidence is not admissible as substantive evidence and the prosecutor's statements were improper; however, the State presented overwhelming evidence of defendant's guilt and the trial court instructed the jury that it was not to consider evidence of defendant's prior convictions as evidence of defendant's guilt.

STATE v. McEACHIN

[142 N.C. App. 60 (2001)]

Appeal by defendant from judgment dated 16 February 1999 by Judge Steve A. Balog in Richmond County Superior Court. Heard in the Court of Appeals 23 January 2001.

*Attorney General Michael F. Easley, by Assistant Attorneys General Daniel P. O'Brien and Amy C. Kunstling, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defenders Bobbi Jo Markert and Daniel R. Pollitt, for defendant-appellant.*

GREENE, Judge.

Rapheal Dwayne McEachin (Defendant) appeals a judgment dated 16 February 1999, entered after a jury rendered a verdict finding him guilty of second-degree murder.

The State presented evidence at trial that on 26 August 1997, Robert Kelly (Kelly), John Paul Morrison (Morrison), and Perry Dawkins (Dawkins) were sitting on some "crossties" on Page Street in Hamlet. Kelly testified Natasha Johnson (Johnson) lived in a house located approximately twenty feet from where Kelly and the other men were sitting. During the evening, Morrison walked "down the street" with Johnson, and Morrison and Johnson had an argument. At that time, Defendant, whose nickname is "Boobie," was standing in front of Johnson's house. Defendant "lifted his shirt up like he might have a gun or something." A few seconds later, Kelly saw Morrison fire a gun; however, Kelly could not see what direction Morrison was firing because it was dark. After Morrison fired his gun, Kelly, Morrison, and Dawkins began walking toward a "big field" located off of Page Street. The parties walked in the direction of a business called Rob's Place, which was located across the field. As the parties were walking away from Johnson's house, a car driven by Dwayne Jones (Jones) pulled up near the parties. Defendant stood at the window of the car, and Kelly saw Jones pass something out of the window to Defendant. Defendant then said, " 'I'll kill all you n----,' " and began firing in the direction of the three men. The three men began to run across the field and Kelly heard approximately twelve shots fired. Dawkins was struck by a bullet and fell to the ground. He subsequently died as a result of a gunshot wound to the head. Kelly testified that none of the parties in the field fired any weapons while Defendant was shooting at them.

Jones testified that on the night of the shooting, he drove his girlfriend's vehicle down Page Road. As the vehicle approached the area

near Johnson's house, Jones saw Morrison "running towards the [vehicle] from [Johnson's] house." Defendant approached the vehicle and said, " 'They're shooting at me. They're shooting at me.' " Defendant appeared "frantic," and he asked Jones whether Jones had a gun in the vehicle. Jones then gave Defendant a nine[-]millimeter gun, and Defendant ran in the direction of Rob's Place. Jones immediately began to back the vehicle down Page Road and, as he parked the vehicle, he heard gun shots. Defendant then approached the parked vehicle and got into the vehicle. Defendant told Jones, " 'I think I got one' " because Defendant had "seen one drop." Jones subsequently drove Defendant to the home of a friend, and Defendant put the gun given to him by Jones under a bed.

Dawkins' father testified that he arrived at the scene of the shooting before any medical assistance arrived. Dawkins' father asked Dawkins how badly he was hurt, and Dawkins replied, " 'I don't think I'm going to make it, dad.' " Dawkins' father then asked Dawkins who "did it to him." Dawkins replied, "that he didn't know the guy's real name but he called him Boobie."

Aprille Grant Sweatt (Sweatt), a crime scene specialist for the Richmond County Sheriff's Department, testified that she was assigned to collect evidence from the scene of the shooting incident. Sweatt testified she collected eleven "RP 9[-]millimeter Rugger spent shell casing[s]" at the location where the shooting took place.

Larry Bowden (Bowden), a detective with the Richmond County Sheriff's Department, testified that on 27 August 1997, he spoke with Jones. After speaking with Jones, Bowden recovered a "9[-]millimeter Rugger handgun" from under a mattress in a residence in Hamlet. Jones had a key to the residence and was the "caretaker" of the residence. After the recovery, the gun and the spent shell casings were sent to the North Carolina State Bureau of Investigation (SBI). Ronald Marrs (Marrs), a firearms expert employed as a special agent with the SBI, testified he examined the spent shell casings and the gun. Based on his examination, Marrs concluded the spent shell casings were fired from the gun "to the exclusion of all other firearms."

At the close of the State's evidence, Defendant made a motion to dismiss the charge of first-degree murder on the ground "the State has not shown sufficient evidence of a specific intent to kill." The trial court denied the motion.

Johnson testified for Defendant that on the evening of 26 August 1997, Morrison asked her to come out of her house and speak to him.

Johnson and Morrison then walked down Page Street. While they were talking, they had an argument and Johnson began walking back to her house. When she reached her mailbox, Morrison began firing a gun in her direction and she ran into her house. Defendant was inside Johnson's house at that time, and Johnson's child was sitting on the front porch steps. Defendant ran outside during the shooting. Johnson then heard shots fired from "[p]robably two or three" guns.

Defendant also called Shawn Wilkerson (Wilkerson) to testify on his behalf. Prior to Wilkerson taking the stand and outside the presence of the jury, the State noted that Wilkerson had criminal charges pending against him, including a burglary charge. The State indicated its intent to question Wilkerson about these charges during cross-examination, stating the charges related to Wilkerson's credibility. The State noted Wilkerson's attorney was present in the courtroom and that Wilkerson might "want to take the Fifth rather than be questioned about those pending charges." The trial court then questioned Wilkerson to enquire whether he had spoken to his attorney regarding the possible effect of his testimony on the pending charges, and Wilkerson indicated that he had discussed this issue with his attorney. Defendant did not raise any objections at that time to the State's proposed line of questioning.

Wilkerson testified during direct examination that he was in a vehicle with Jones on the night of the shooting incident. Wilkerson testified that as he and Jones were driving on Page Road, Defendant approached the vehicle and said that someone was "shooting at him." Defendant reached into the vehicle and took out a gun. Wilkerson then heard Defendant fire the gun. After he heard the gunshots from the gun fired by Defendant, Wilkerson heard "[t]wo more guns."

During cross-examination, Wilkerson testified he had consumed "[f]our 40[-]ounce beers" on the night of the shooting. The State asked Wilkerson "what [he had] been tried and convicted of or pled guilty [to] in the last 10 years for which [he] could receive a jail sentence of 60 days or more." Wilkerson responded that he had been convicted of "drug paraphernalia," "first[-]degree [burglary]," numerous "DWI[s]," "driving while license revoked, breaking and entering, larceny, [and] threats." The State then questioned Wilkerson regarding his pending burglary charge, and the following statements were made:

[State]: And you've got a pending burglary charge now, is that right?

[Wilkerson]:  Yes, sir.

[State]:  Whose house did you break into?

[Wilkerson]:  I did not know the person's name.

[Defense counsel]:  Your Honor, objection.

THE COURT:  Just a moment. Sustained as to the form of the question.

[State]:  You broke into somebody's house in the nighttime on that one, didn't you?

[Defense counsel]:  Objection.

THE COURT:  It's overruled.

[State]:  Didn't you?

[Wilkerson]:  Did I break into someone's house?

[State]:  Yes, sir.

[Wilkerson]:  That has nothing to do with this case here what my charge is.

[State]:  You broke into someone's house, didn't you?

[Wilkerson]:  Yes, sir, I did.

[State]:  In the middle of the night?

[Wilkerson's counsel]:  Your Honor, I would raise an objection.

THE COURT:  It's his response. It's his privilege. You may go to your next question.

[State]:  It was during the nighttime that you broke into that house, isn't that right?

[Wilkerson]:  Correct.

[State]:  And you were going into that house to steal things, isn't that right?

[Wilkerson]:  No.

[State]:  Just to look around?

[Defense counsel]:  Objection.

THE COURT:  Overruled.

[State]: I don't think I have anything else for this witness your honor.

Defendant testified that on the night of the shooting he was playing with several children on Johnson's front porch. Defendant stated that while he was on the porch he saw Morrison standing near the house. After Defendant told Morrison to "chill out," Morrison began firing a gun in Defendant's direction. Defendant ran into the house and, when he realized Johnson's child was still on the front porch, he ran back onto the porch to get the child. Morrison continued firing his gun in the direction of the porch and Defendant ran back into the house. A few minutes later, Defendant came out of the house for a second time. He saw Jones driving down the road and he approached Jones' vehicle. Defendant then "grabbed [a] gun" from Jones and ran after Morrison. Defendant fired shots "in[to] the air" until "the gun went empty." While he was firing the gun, Defendant saw Morrison and Kelly firing guns in Defendant's direction; however, he did not see Dawkins. After Defendant finished firing his gun, he jumped into Jones' vehicle and the parties drove away from the scene. Defendant testified he did not shoot Dawkins.

During cross-examination, the State asked Defendant "what [he had] been tried and convicted of in the last ten years for which [he] could receive a jail term of 60 days or more." Defendant responded that he had been convicted of "voluntary manslaughter" and "simple assault."

At the close of all the evidence, Defendant renewed his motion to dismiss the charge of first-degree murder. The trial court denied the motion.

During its closing argument, the State made the following statement: "Members of the jury, a killer sits among us, [Defendant]. He's killed before and the State contends that we've shown to you he's killed again." Defendant did not object to this statement. Later in its closing argument, the State made the following statement: "[D]efendant has got everything to lose. He's killed before . . . . [He] admitted that he was convicted of voluntary manslaughter, taking the life of another person. He's got every reason to get up here and give you a fabrication, members of the jury." Defendant objected to this statement, and the trial court overruled the objection.

Subsequent to closing arguments, the trial court instructed the jury, in pertinent part:

STATE v. McEACHIN

[142 N.C. App. 60 (2001)]

When evidence has been received that at an earlier time . . . [D]efendant was convicted of criminal charges, you may consider this evidence for one purpose only. If, considering the nature of the crimes, you believe that this bears on truthfulness, then you may consider it, together with all other facts and circumstances bearing upon . . . [D]efendant's truthfulness, in deciding whether you will believe or disbelieve his testimony at this trial. It is not evidence of . . . [D]efendant's guilt in this case. You may not convict him on the present charge because of something he may have done in the past.

After its deliberations, the jury returned a verdict finding Defendant guilty of second-degree murder. Defendant then made a motion in open court to set aside the verdict based on the State's statements in its closing argument that Defendant had "killed before." The trial court denied Defendant's motion.

---

The issues are whether: (I) the record contains substantial evidence Defendant killed Dawkins; (II) admission of evidence regarding Wilkerson's pending burglary charge pursuant to Rule 608(b) of the North Carolina Rules of Evidence was plain error; and (III) the statements made by the State during its closing argument that Defendant had "killed before," referring to Defendant's previous conviction for voluntary manslaughter, were improper and, if so, whether the statements resulted in prejudicial error.

I

**[1]** Defendant argues the record does not contain substantial evidence Defendant killed Dawkins and, therefore, the charge of first-degree murder should have been dismissed. We disagree.

A motion to dismiss is properly denied if "there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franklin*, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990). "When ruling on a motion to dismiss, all of the evidence should be considered in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence." *State v. Davis*, 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998). First-degree murder is

the "unlawful killing of a human being with malice, premeditation, and deliberation." *State v. Truesdale*, 340 N.C. 229, 234, 456 S.E. 2d 299, 302 (1995).

In this case, the evidence, viewed in the light most favorable to the State, shows that prior to his death Dawkins identified Defendant as the person who shot him. A reasonable person could find this evidence is sufficient to show Defendant killed Dawkins. Moreover, the State presented substantial circumstantial evidence Defendant shot Dawkins, including the following evidence: Defendant retrieved a gun from Jones' vehicle and said, " 'I'll kill all you n----' "; after the shooting, Defendant told Jones that he thought he " 'got one' " because he had "seen one drop"; eleven spent shell casings were recovered from the scene and these shell casings matched the gun recovered by Bowden; the recovered gun was the gun used by Defendant; Defendant admitted firing shots "in[to] the air" until the gun he was using "went empty"; and Dawkins died from a gunshot wound to the head. A reasonable person could infer, based on this circumstantial evidence, that Defendant shot Dawkins. *See State v. Triplett*, 316 N.C. 1, 5, 340 S.E.2d 736, 739 (1986) (when a motion to dismiss "puts into question the sufficiency of circumstantial evidence, the court must decide whether a reasonable inference of the defendant's guilt may be drawn from the circumstances shown").[1] Accordingly, the trial court properly denied Defendant's motion to dismiss the charge of first-degree murder.

## II

[2] Defendant argues evidence of Wilkerson's pending burglary charge was inadmissible under Rule 608(b) of the North Carolina Rules of Evidence. Defendant contends admission of this evidence was plain error.[2]

---

1. Defendant does not argue in his brief to this Court that the record does not contain substantial evidence Defendant acted with "malice" and "premeditation and deliberation." We, therefore, do not address these issues. *See* N.C.R. App. P. 28(b)(5).

2. Additionally, Defendant argues in his brief to this Court that the issue of whether evidence regarding Wilkerson's pending burglary charge was inadmissible under Rule 608(b) was properly preserved for appellate review. The record shows, however, that Defendant did not object to this line of questioning on the ground it violated Rule 608(b). Rather, after Wilkerson testified that he did have a pending burglary charge against him and that he had broken into someone's home, Defendant made a general objection. The issue of whether this evidence was inadmissible under Rule 608(b), therefore, was not properly preserved for appellate review. *See* N.C.R. App. P. 10(b)(1). Accordingly, we only address Defendant's argument that admission of this evidence was plain error. *See* N.C.R. App. P. 10(c)(4).

The test for plain error places the burden on a defendant to show that error occurred and that the error was a " ' "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." ' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.) (footnote omitted), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). Consequently, the defendant must show the error "had a probable impact on the jury's finding of guilt." *Id.* at 661, 300 S.E.2d at 379. Thus, if this Court determines an error constitutes "plain error," the defendant is entitled to a new trial.

A witness may be impeached under Rule 608(b) based on specific acts of misconduct where:

> (i) the purpose of the inquiry is to show conduct indicative of the actor's character for truthfulness or untruthfulness; (ii) the conduct in question is in fact probative of truthfulness or untruthfulness; (iii) the conduct in question is not too remote in time; (iv) the conduct did not result in a conviction; and (v) the inquiry takes place during cross-examination.

*State v. Bell*, 338 N.C. 363, 382, 450 S.E.2d 710, 720 (1994), *cert. denied*, 515 U.S. 1163, 132 L. Ed. 2d 861 (1995); N.C.G.S. § 8C-1, Rule 608(b) (1999). Examples of conduct probative of the truthfulness or untruthfulness of a witness include " 'use of false identity, making false statements on affidavits, applications or government forms (including tax returns), giving false testimony, attempting to corrupt or cheat others, and attempting to deceive or defraud others.' " *State v. Morgan*, 315 N.C. 626, 635, 340 S.E.2d 84, 90 (1986) (quoting 3 D. Louisell & C. Mueller, *Federal Evidence* § 305, at 228-29 (1979)).

In this case, the State attempted to impeach Wilkerson pursuant to Rule 608(b) by questioning him regarding a pending burglary charge. Wilkerson testified he broke into someone's house during the nighttime and, as a result, was charged with burglary. Evidence of this conduct by Wilkerson was not probative of his propensity for truthfulness or untruthfulness. *See Bell*, 338 N.C. at 382-83, 450 S.E.2d at 721 (evidence witness committed larceny, without more, was not probative of witness's propensity for truthfulness or untruthfulness). Admission of this evidence was, therefore, error.[3] Nevertheless, the

---

3. Although evidence a witness has committed a burglary is not probative of his character for truthfulness and, thus, is not admissible under Rule 608(b), evidence the witness has been *convicted* of burglary may be admissible under Rule 609 provided the conviction falls within the time period set out in Rule 609 regarding admission of evi-

admission of this evidence is "plain error" only if the evidence had "a probable impact on the jury's finding of guilt." Because the State presented evidence under Rule 609 of the North Carolina Rules of Evidence that Wilkerson previously was convicted of first-degree burglary and Wilkerson testified he consumed "[f]our 40[-]ounce beers" on the evening of the shooting, evidence that Wilkerson had a pending burglary charge for breaking into someone's home in the nighttime did not have a probable impact on the jury's determination of whether Wilkerson's testimony was truthful. This evidence, therefore, did not have a "probable impact on the jury's finding of guilt." Accordingly, the admission of this evidence was not plain error.

## III

[3] Defendant argues the trial court erred by failing to intervene ex mero motu when the State stated during its closing argument to the jury, without objection, that Defendant "killed before and . . . he's killed again." Defendant also argues the trial court erred by overruling Defendant's objection to the State's subsequent statement during its closing argument that Defendant "killed before."

When a defendant appears as a witness at trial, evidence of the defendant's past convictions may be admissible for the purpose of attacking the defendant's credibility as a witness. N.C.G.S. § 8C-1, Rule 609(a). Such evidence, however, is not admissible as substantive evidence to show the defendant committed the crime charged. *State v. Tucker*, 317 N.C. 532, 543, 346 S.E.2d 417, 423 (1986). Additionally, when evidence is admitted pursuant to Rule 609 for the purpose of impeaching the defendant, it is improper for the State to suggest in its closing argument to the jury that the evidence is substantive evidence of the defendant's guilt. *Id.* at 543-44, 346 S.E.2d at 423-24.

When a defendant does not object at trial to an improper jury argument, the trial court must intervene ex mero motu if the argument is "so grossly improper as to be a denial of due process." *State v. Zuniga*, 320 N.C. 233, 257, 357 S.E.2d 898, 914, *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987). The trial court's failure to properly

---

dence of prior convictions. N.C.G.S. § 8C-1, Rule 609 (1999). The North Carolina Legislature, therefore, has not imposed a requirement under Rule 609 that a *conviction* used to impeach a witness be probative of the witness's propensity for truthfulness. *Compare* Fed. R. Evid. 609(a) (prior conviction may be admissible for purpose of attacking credibility of witness if crime was "punishable by death or imprisonment in excess of one year" or if crime "involved dishonesty or false statement, regardless of the punishment").

intervene during such an argument constitutes error. *State v. Sexton*, 336 N.C. 321, 363, 444 S.E.2d 879, 903, *cert. denied*, 513 U.S. 1006, 130 L. Ed. 2d 429 (1994). Additionally, when the State makes an improper jury argument and the defendant objects to the argument, the trial court's failure to sustain the objection and instruct the jury not to consider the State's improper argument is error. *State v. Thompson*, 118 N.C. App. 33, 42, 454 S.E.2d 271, 276, *disc. review denied*, 340 N.C. 262, 456 S.E.2d 837 (1995). The defendant, however, is entitled to a new trial based on either of these errors only when the errors are prejudicial. *Id.*; N.C.G.S. § 15A-1443 (1999). When an error is not constitutional, it is prejudicial only upon a showing by the defendant that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." N.C.G.S. § 15A-1443(a).

In this case, the State's jury argument that Defendant had "killed before and . . . he's killed again" and the State's subsequent statement that Defendant had "killed before" suggested to the jury that it could consider evidence of Defendant's prior conviction for voluntary manslaughter as substantive evidence.[4] These statements were, therefore, improper. *See Tucker*, 317 N.C. at 543-44, 346 S.E.2d at 423-24. Assuming, without deciding, that the first statement was grossly improper and, therefore, required intervention by the trial court, we must determine whether the trial court's failure to intervene was prejudicial error. Likewise, we must determine whether it was prejudicial error for the trial court to overrule Defendant's objection to the second statement that Defendant had "killed before." As discussed in Part I of this opinion, the State presented overwhelming evidence at trial of Defendant's guilt. Based on this evidence, and considering the trial court's instruction to the jury that it was not to consider evidence of Defendant's prior convictions as evidence of Defendant's guilt in this case, there is not a reasonable possibility that "had the error in question not been committed, a different result would have been reached at trial." *See State v. Vines*, 105 N.C.

---

4. The State argues in its brief to this Court that its second statement that Defendant had "killed before," to which Defendant objected, was not made for the purpose of arguing Defendant's previous conviction for voluntary manslaughter was substantive evidence. Rather, the State argues its statement that Defendant had "killed before" suggested to the jury that Defendant's previous conviction related to the truthfulness of his testimony at trial. The record shows, however, that when the State's comment Defendant had "killed before" is reviewed in the context of the State's closing argument, which included a statement Defendant had "killed before and the State contends . . . he's killed again," the statement suggested to the jury that Defendant's previous conviction was substantive evidence Defendant committed the crime charged.

App. 147, 156, 412 S.E.2d 156, 163 (1992) (trial court's failure to intervene ex mero motu during grossly improper jury argument not prejudicial error considering strong and convincing case against defendant); *Thompson*, 118 N.C. App. at 42, 454 S.E.2d at 276 (overwhelming evidence of defendant's guilt may render error harmless). The trial court's failure to intervene and its subsequent overruling of Defendant's objection, therefore, did not result in prejudicial error. Further, these errors, considered cumulatively with the erroneous admission of evidence regarding Wilkerson's pending burglary charge, did not result in prejudicial error. Accordingly, Defendant is not entitled to a new trial.

No error.

Judges HORTON and TYSON concur.