STATE OF NORTH CAROLINA v. BOBBY RAY McCOLLUM

No. COA05-845

(Filed 6 June 2006)

## 1. Criminal Law— prosecutor's argument—reference to World Trade Center attack

The trial court did not abuse its discretion in a first-degree murder case by failing to intervene ex mero motu during the State's closing argument that defendant contends included prejudicial matters outside the record, because: (1) the context for the prosecutor's comments was to explain that defendant's lack of a specific

motive could not absolve him of responsibility for the criminal act; (2) the prosecutor's reference to the World Trade Center attack was a reminder to the jury there is not always an explanation for why criminal actions occur, and was not an attempt to somehow equate defendant's actions with those of terrorists on 11 September 2001; and (3) argument of counsel must be left largely to the control and discretion of the presiding judge, and counsel is accorded wide latitude in the argument of hotly contested cases.

**2. Criminal Law— prosecutor's argument—doctor's testimony could not impact or influence assessment of defendant's premeditation and deliberation**

The trial court did not abuse its discretion in a first-degree murder case by failing to sustain defendant's objection to the prosecutor's closing argument that the jury was in a better position to assess defendant's state of mind than the doctor and that the doctor kept talking about terms of psychiatry which did not apply as opposed to legal terms, because: (1) the prosecutor's comments were neither extreme nor calculated to prejudice defendant; (2) the prosecutor apprised the jury that the doctor's testimony could not impact or influence their evaluation of whether defendant had the premeditation and deliberation to murder the victim; (3) the prosecutor's argument was not prejudicial toward defendant but rather an accurate statement regarding the law; and (4) defendant failed to show how the results of the trial would have been different absent such remarks.

**3. Criminal Law— instructions—medical expert cannot testify to legal terms**

The trial court did not err in a first-degree murder case by refusing to instruct the jury that a medical expert could not testify to legal terms.

**4. Homicide— first-degree murder—requested instruction— premeditation and deliberation**

The trial court did not err in a first-degree murder case by failing to read the entire jury instruction listing all seven circumstances whereby proof of defendant's premeditation or deliberation could be inferred regarding the unlawful killing of the victim, because: (1) not only did the trial court's actual instruction provide the substance of what defendant requested, but defense counsel declared the desired instruction on infliction of lethal wounds after the victim is felled was inapplicable to the facts of this case; (2) six of

the seven circumstances listed as being indicative of premeditation and deliberation were given to the jury; (3) so long as the substance of the requested instruction is provided, such instruction is sufficient; and (4) defense counsel admitted both the facts and the evidence did not warrant inclusion of the requested circumstance.

**5. Appeal and Error— preservation of issues—failure to argue**

The remainder of defendant's assignments of error that were not briefed on appeal are deemed abandoned under N.C. R. App. P. 28(b)(6).

Judge WYNN concurring in the result.

Appeal by defendant from judgment entered 19 July 2004 by Judge J.B. Allen, Jr. in Alamance County Superior Court. Heard in the Court of Appeals 8 February 2006.

*Attorney General Roy Cooper, by Special Deputy Attorney General Alexander McC. Peters, for the State.*

*Glover & Petersen, P.A., by Ann B. Petersen for defendant-appellant.*

CALABRIA, Judge.

Bobby Ray McCollum ("defendant") appeals from a judgment entered upon a jury verdict finding him guilty of first-degree murder. He was sentenced to life imprisonment without parole in the North Carolina Department of Correction. We find no error.

The State presented the following evidence at trial: on 30 August 2003, Willis McCollum ("Willis"), defendant's brother, and Leon Evans ("Leon"), defendant's first cousin, asked Priscilla McCollum Jennings ("Priscilla"), defendant's sister and wife of the victim, Weldon Lamont Jennings ("Weldon"), if they could have a family cookout at Priscilla's mother's home. After Priscilla's mother agreed and Leon and Willis bought the food, Priscilla, Weldon, Leon, and Willis all made their way to Priscilla's mother's home. After cooking for approximately thirty minutes, Willis stated he saw defendant coming and proceeded, along with Leon, to argue with defendant regarding mowing lawns that day. Defendant had a side business mowing lawns and had expected both Willis and Leon to assist him that day. Weldon apparently made a joke referencing the argument between defendant and Willis and Leon. Defendant threw up his hands and left the cookout. Twenty minutes later, defendant returned and according to Priscilla "he just came right

around and put his hand on [Weldon's] head and put the gun to [Weldon's] head and pulled the trigger." Priscilla grabbed her granddaughter, ran into the house, and called 911.

Deputy Sheriff Christopher Ross ("Deputy Ross") testified he responded to the 911 call. Upon arrival, Deputy Ross met with Willis and was told defendant shot Weldon. Sergeant Gary Summers ("Sergeant Summers"), who had known defendant for nearly thirty years, proceeded to defendant's residence. Once apprehended by police, defendant stated "[h]ell, man, I shot him. I just meant to knock the s\*\*t out of him with the gun, and it went off." Police retrieved the gun used by defendant in the shooting from defendant's home.

Defendant presented the following evidence at trial: Felicia McCollum ("Felicia"), defendant's wife of 22 years, testified that in June of 1984, defendant's brother, George, was shot and killed. The bullet, which was meant for defendant, went in defendant's jaw and through his neck before it struck George. Defendant became very withdrawn, distant, and paranoid. Felicia also testified that one year later, defendant's father fired a gun at him wounding his hand. Defendant and his father never spoke of the incident again and as a result, defendant carried around a tremendous amount of guilt once his father died. Finally, Felicia testified that in 1987 defendant's eldest daughter was born with a variety of congenital birth defects. This added to defendant's financial stress and with it, marital stress, as a result of dividing his time between work and the hospital.

Dr. James Bellard ("Dr. Bellard"), an expert in forensic psychiatry, testified to the following: defendant had post-traumatic stress disorder ("stress disorder"); major depression; and cognitive disorder. Dr. Bellard traced the stress disorder to the events surrounding the shooting of defendant's brother and explained how the stress disorder caused symptoms such as anxiety and irritability. Further, Dr. Bellard testified defendant's depression had similar ingredients to that of defendant's stress disorder. Due to the above medical diagnoses, Dr. Bellard testified "I don't believe that [defendant] was able to form the specific intent to kill [Weldon]." Dr. Bellard also stated "I think he wasn't able to fully appreciate the ramifications, the results of his actions."

At the conclusion of the trial, the jury returned a verdict finding defendant guilty of first-degree murder. The trial court sentenced defendant to life imprisonment without the possibility of parole. Defendant appeals.

## I. *Closing Argument*:

Defendant argues the trial court erred in failing to intervene *ex mero motu* in permitting the State to include prejudicial matters that existed outside the record in its closing argument. Defendant also argues the trial court erred in permitting the State to contend in its closing argument certain matters contrary to the law. We disagree.

### a. *No Objection*:

**[1]** "The standard of review when a defendant fails to object at trial is whether the [closing] argument complained of was so grossly improper that the trial court erred in failing to intervene *ex mero motu.*" *State v. Trull,* 349 N.C. 428, 451, 509 S.E.2d 178, 193 (1998). "In determining whether the prosecutor's argument was . . . grossly improper, this Court *must examine the argument in the context in which it was given and in light of the overall factual circumstances to which it refers.*" *State v. Hipps,* 348 N.C. 377, 411, 501 S.E.2d 625, 645 (1998) (emphasis added). " '[T]he impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it.' " *Id.* (quoting *State v. Johnson,* 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979)).

In the instant case, the prosecutor said the following without objection from defendant.

> We live in violent times. There have been many cold-blooded murders that seem to make no sense at all. And if you stop and think about it, you realize that. We've had presidents who were shot, who were assassinated. We've had 3,000 people in New York who were assassinated by the airplane flying into a building. Does it make any sense? Of course not. Is it rational[sic]? Certainly not. Is it murder? Absolutely.

> And that's what the defendant did in this case. He executed Mr. Jennings. The word assassinate, in Webster's Dictionary, means a murderer who strikes suddenly and by surprise. The word assassinate means to murder by surprise, to attack, to murder by surprise attack.

In accordance with *Hipps, supra,* examining the closing argument in light of both the given context and factual circumstances, it is clear the trial court did not err in failing to intervene *ex mero motu.* First, the

context for the prosecutor's comments was to explain that defendant's lack of a specific motive could not absolve him of responsibility for the criminal act. Defendant argued at trial because he lacked motive to murder Mr. Jennings, he also lacked the necessary premeditation and deliberation to commit first-degree murder. Second, the prosecutor's reference to the World Trade Center attack was a reminder to the jury there is not always an explanation for why criminal actions occur, not an attempt to somehow equate defendant's actions with those of terrorists on 11 September 2001. Furthermore, our Supreme Court has "held in numerous cases that argument of counsel must be left largely to the control and discretion of the presiding judge and that counsel must be allowed wide latitude in the argument of hotly contested cases." *State v. Monk*, 286 N.C. 509, 515, 212 S.E.2d 125, 131 (1975) (citations omitted). Therefore, because the remarks by the prosecutor were not so grossly improper as to require intervention, we hold the trial court was correct in not intervening *ex mero motu*.

  b. *Objection*:

[2] "The standard of review for improper closing arguments that provoke timely objection from opposing counsel is whether the trial court abused its discretion by failing to sustain the objection." *State v. Jones*, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002). "In order to assess whether a trial court has abused its discretion when deciding a particular matter, this Court must determine if the ruling 'could not have been the result of a reasoned decision.' " *Id.* (quoting *State v. Burrus*, 344 N.C. 79, 90, 472 S.E.2d 867, 875 (1996). Nevertheless, because "[a]rguments of counsel are largely in the control and discretion of the trial court[,] [t]he appellate courts ordinarily will not review the exercise of that discretion unless the *impropriety of counsel's remarks is extreme and is clearly calculated to prejudice the jury*." *State v. Huffstetler*, 312 N.C. 92, 111, 322 S.E.2d 110, 122 (1984) (emphasis added).

  In the instant case, the prosecutor said the following:

  Now, indeed, members of the jury, you folks heard a lot more, seen a lot more and know a lot more about this case than Dr. Bellard knows. You are in a much better position to assess the defendant's state of mind and his actions than the doctor. And not to mention the fact that Dr. Bellard kept talking about terms of psychiatry, which do not apply as opposed to legal terms which do. You must decide does the evidence prove. . . .

In accordance with *Huffstetler*, *supra*, the prosecutor's comments were neither extreme nor calculated to prejudice the defendant. In fact, the

prosecutor apprised the jury that Dr. Bellard's testimony could not impact or influence their evaluation of whether or not defendant had the premeditation and deliberation to murder Mr. Jennings. This was not done, as argued by defendant, to suggest "the jury should find that [defendant] had premeditation and deliberation because Dr. Bellard never testified that he did not." The prosecutor's argument was not prejudicial towards defendant but rather an accurate statement regarding the law. *See State v. Daniel*, 333 N.C. 756, 763, 429 S.E.2d 724, 729 (1993) (stating "we have held that testimony by medical experts relating to precise legal terms such as premeditation or deliberation . . . should be excluded.") Moreover, error "is prejudicial *only upon a showing by the defendant that* there is a reasonable possibility that, *had the error in question not been committed, a different result would have been reached* at the trial." *State v. McEachin*, 142 N.C. App. 60, 70, 541 S.E.2d 792, 799 (2001) (citation and internal quotation marks omitted) (emphasis added). Though defendant argues this portion of the prosecutor's closing argument was unfair and ultimately prejudicial, he fails to clearly illustrate why the result would have been any different absent such remarks. We discern no abuse of discretion by the trial court and consequently, defendant's assignments of error pertaining to the State's closing argument are overruled.

II. *Jury Instruction not Given:*

[3] Defendant next argues the trial court erred in refusing to instruct the jury that a medical expert could not testify to legal terms. We disagree. Here, defendant's entire argument is premised on the proposition that the prosecutor's closing argument, informing the jury that Dr. Bellard's testimony could not impact or influence their assessment of whether or not defendant had the premeditation and deliberation to murder Mr. Jennings, was error. That argument was refuted above and remains equally unavailing here. This assignment of error is overruled.

III. *Jury Instruction Given:*

[4] Defendant argues the trial court erred in not reading the entire jury instruction listing all seven circumstances whereby proof of defendant's premeditation or deliberation could be inferred regarding the unlawful killing of Mr. Jennings. Defendant contends though the trial court charged the jury in accordance with Pattern Jury Instruction 206.13, the court's rendition excluded one of the circumstances from the list of seven circumstances and this exclusion constituted reversible error. We disagree.

Though "[a] trial court must give a requested instruction that is a correct statement of the law and is supported by the evidence[,] [t]he trial court need not give the requested instruction verbatim [for] an instruction that gives the substance of the requested instructions is sufficient." *State v. Conner*, 345 N.C. 319, 328, 480 S.E.2d 626, 629 (1997) (citations omitted). In the instant case, not only did the actual instruction by the trial court provide the substance of what defendant requested, but defendant's counsel declared the desired instruction was inapplicable to the facts of this case.

Pattern Jury Instruction 206.13 reads as follows:

Neither premeditation or deliberation are usually susceptible of direct proof. They may be proved by circumstances from which they may be inferred, such as the lack of provocation by the victim, conduct of the defendant before, during, and after the killing, threats and declarations of the defendant, use of grossly excessive force, infliction of lethal wounds after the victim is felled, brutal or vicious circumstances of the killing, [and] manner in which or the means by which the killing was done.

The actual instruction given by the trial court excepted the circumstance of "infliction of lethal wounds after the victim is felled." Thus, six of the seven circumstances listed as being indicative of premeditation and deliberation were given to the jury. This appears to follow the prescription of *Conner*, *supra*, that so long as the "substance" of the requested instruction is provided, such an instruction is sufficient. Moreover, in arguing for inclusion of the excepted circumstance, defendant's counsel asserted "I realize it <u>did not happen</u> in this case, the infliction of lethal wounds after the victim was felled, but all the others were read." The trial court acknowledged excluding this circumstance stating "I made the determination . . . there was evidence to support all those circumstances, except infliction of lethal wounds after the victim has felled[.]" Consequently, since defendant's counsel admitted both the facts and the evidence did not warrant inclusion of the requested circumstance, the "substance" of his request was in fact given. We overrule this assignment of error.

**[5]** The remainder of defendant's assignments of error were not briefed on appeal and thus, according to N.C. R. App. P. 28(b)(6) (2005), they are abandoned.

No error.

Judge BRYANT concurs.

STATE v. McCOLLUM

[177 N.C. App. 681 (2006)]

Judge WYNN concurs in the result.

WYNN, Judge, concurring in the result.

I do not agree with the majority's conclusion that "because the remarks by the prosecutor were not so grossly improper as to require intervention, we hold the trial court was correct in not intervening *ex mero motu.*" Instead, in my opinion, trial court erred in its failure to intervene *ex mero motu* to protect Defendant's rights and to preserve the sanctity of the proceedings. But I concur in the majority's result because this error does not amount to prejudicial error.

Where a defendant has not objected to a closing argument, the standard of review on appeal is whether the trial court erred in failing to intervene *ex mero motu* to protect the rights of the parties and the sanctity of the proceedings. *State v. Walters,* 357 N.C. 68, 101-02, 588 S.E.2d 344, 364, *cert. denied,* 540 U.S. 971, 157 L. Ed. 2d 320 (2003). The reviewing court must determine whether the trial court should have "intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made." *State v. Jones,* 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002).

In *State v. Jones,* our Supreme Court held that a prosecutor's comparative references between the defendant's shootings and the Columbine shootings and the bombing of the federal building in Oklahoma City were improper because they (1) "referred to events and circumstances outside the record;" (2) "urged jurors to compare defendant's acts with the infamous acts of others;" and (3) "attempted to lead jurors away from the evidence by appealing instead to their sense of passion and prejudice." *Jones,* 355 N.C. at 132, 558 S.E.2d at 107. The Court found the impact of the prosecutor's remarks was "too grave to be easily removed from the jury's consciousness[,]" even with instructions to the jury to disregard the statements. *Id.*

Subsequent to our Supreme Court's decision in *Jones,* this Court awarded a new trial to a defendant where the prosecutor made a comparison of the defendant's acts to those of the 11 September 2001 terrorists. *State v. Millsaps,* 169 N.C. App. 340, 610 S.E.2d 437 (2005). The prosecutor in *Millsaps* stated in relevant part:

They want you to disregard all that evidence of strong motive and say, well, he just had this crazy delusion about following God's ·

·orders. Yeah, *that's like people that fly airplanes into buildings for their ends and claim to be doing God's work.*

*Id.* at 346-47, 610 S.E.2d at 442 (emphasis in original). The *Millsaps* Court held that the prosecutor's remarks "appealed to the jury's 'sense of passion and prejudice' by comparing defendant's acts to infamous events outside the record." *Id.* at 349, 610 S.E.2d at 443. The Court explained:

> defendant's commission of the shootings and his mental defect at the time of the shootings were both uncontested; the contested issue at trial was whether defendant knew right from wrong at the time he committed the acts. We cannot say beyond a reasonable doubt that the improper and prejudicial argument by the prosecutor, which was neither checked nor cured by the trial court, did not contribute to defendant's conviction. A different result might have been reached had the trial court properly exercised its discretion to control the prosecutor's misleading characterizations and improper inferences. Therefore, we have no choice but to award defendant a new trial.

*Id.*

Although the facts in *Millsaps* are strikingly similar to the facts in the instant case, it should be noted that the defendant in *Millsaps* objected to the prosecutor's remarks at trial and that Defendant in this case did not. However, as it relates to counsel's failure to object to closing arguments, our Supreme Court explained:

> . . . this Court is mindful of the reluctance of counsel to interrupt his adversary and object during the course of closing argument for fear of incurring jury disfavor. Thus, it is incumbent on the trial court to monitor vigilantly the course of such arguments, to intervene as warranted, to entertain objections, and to impose any remedies pertaining to those objections. Such remedies include, but are not necessarily limited to, requiring counsel to retract portions of an argument deemed improper or issuing instructions to the jury to disregard such arguments.

*Jones*, 355 N.C. at 129, 558 S.E.2d at 105.

As "it is incumbent on the trial court to monitor vigilantly the course of such arguments [and] to intervene as warranted," *see Jones*, 355 N.C. at 129, 558 S.E.2d at 105, I would hold the trial court erred in its failure to intervene *ex mero motu* to protect Defendant's rights.

Notwithstanding, for reasons given in the majority opinion, I would hold that this error was not prejudicial and thus Defendant is not entitled to a new trial as a result of this error. *Cf. Millsaps*, 169 N.C. App. at 349, 610 S.E.2d 443 (awarding a new trial where the court could not "say beyond a reasonable doubt that the improper and prejudicial argument by the prosecutor, which was neither checked nor cured by the trial court, did not contribute to defendant's conviction.").