IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-313

Filed 19 December 2023

Guilford County, No. 18CRS089940

STATE OF NORTH CAROLINA

v.

ZENAIDA FRANCHESCA FIGUEROA

Appeal by Defendant from judgment entered 7 February 2022 by Judge Martin B. McGee in Guilford County Superior Court. Heard in the Court of Appeals 18 October 2023.

*Attorney General Joshua H. Stein, by Assistant Attorney General Nicholas Sorensen, for the State-Appellee.*

*Joseph P. Lattimore for Defendant-Appellant.*

COLLINS, Judge.

Defendant appeals from a judgment entered upon a guilty verdict of trafficking methamphetamine. Defendant argues that the trial court plainly erred by admitting expert testimony without first ensuring that the expert's methods were sufficiently reliable or reliably applied to the facts of the case, and that the trial court erred by failing to intervene ex mero motu when the prosecutor made improper remarks during closing argument. Upon review, we hold that the trial court did not plainly err by admitting the expert testimony, and that the trial court did not err by failing

to intervene ex mero motu during closing argument.

## I.  Background

In November 2018, Guilford County law enforcement officers were conducting an undercover investigation of a suspected drug dealer ("the Suspect").  An undercover officer arranged to purchase two ounces of methamphetamine from the Suspect on 26 November 2018 and established a meeting location a few days later. The Suspect arrived at the meeting location in a vehicle driven by Defendant.  When the Suspect arrived at the meeting location, Detective C.E. Sheets and a takedown team of four or five officers approached the vehicle, detained the Suspect and Defendant, and searched the vehicle.  Sheets recovered a brown paper bag from the front passenger's seat, which contained what Sheets described as a "clear white crystally substance" that he suspected was methamphetamine.  Sheets interviewed Defendant and informed her that she would be charged at a later date based on the suspected methamphetamine found in the vehicle.  Sheets then sent the suspected methamphetamine to the state crime lab for analysis.

Defendant was indicted on 18 March 2019 for trafficking methamphetamine by possession.  Defendant was also charged with trafficking methamphetamine by transportation and conspiracy to traffic methamphetamine.  At trial, the State presented expert testimony from Brittnee Meyers, the forensic scientist who examined the suspected methamphetamine that Sheets recovered from the vehicle. Meyers testified that she performed a preliminary color test and a confirmatory

infrared spectrophotometer test on the substance, from which she identified the substance to be methamphetamine. Meyers measured the weight of the methamphetamine to be 56.40 grams.

Sheets also testified about his interview with Defendant. Sheets testified that Defendant initially disclaimed any knowledge of the methamphetamine, but later told him that she "kind of know[s] what's going on." According to Sheets, Defendant stated that the Suspect had asked Defendant if she could "get ahold of two ounces of ice," to which Defendant responded that she could. Defendant then contacted her sister, who put her in touch with a man who goes by the name "Dread." Defendant met with Dread near the meeting location arranged by the undercover officer and the Suspect.

Defendant testified in her own defense and gave an alternate version of events. Defendant testified that the Suspect asked Defendant for a ride to Greensboro but did not explain why. The Suspect asked Defendant to park in a certain spot and within two minutes the vehicle was surrounded by law enforcement. Defendant testified that she consistently denied any knowledge of the methamphetamine while speaking to law enforcement officers, that she did not tell officers that she worked with her sister to procure methamphetamine, and that she did not know anyone named Dread.

The jury found Defendant guilty of trafficking methamphetamine by possession, and not guilty of trafficking methamphetamine by transportation and

conspiracy to traffic methamphetamine. Defendant filed written notice of appeal.

## II. Discussion

### A. Expert Testimony

Defendant argues that the trial court plainly erred by admitting Meyers' testimony and lab report identifying the substance in Defendant's vehicle as methamphetamine because her testimony failed to lay a sufficient foundation for reliability under Evidence Rule 702.

"[A]n unpreserved challenge to the performance of a trial court's gatekeeping function under Rule 702 in a criminal trial is subject to plain error review." *State v. Gray*, 259 N.C. App. 351, 354, 815 S.E.2d 736, 739 (2018) (citation omitted). To show plain error, "a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation omitted). "To show that an error was fundamental, a defendant must establish prejudice–that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* (quotation marks and citations omitted). "[B]ecause plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation marks and citations omitted). The standard is so high "in part at least because the defendant could have prevented any error by making a timely objection." *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83-84 (1986) (citation omitted).

Rule 702(a) provides a three-part test for determining whether expert testimony is admissible:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
>
> (1) The testimony is based upon sufficient facts or data.
>
> (2) The testimony is the product of reliable principles and methods.
>
> (3) The witness has applied the principles and methods reliably to the facts of the case.

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2022). Where the State seeks to prove the identity of a controlled substance through expert testimony, such testimony is admissible only when it is "based on a scientifically valid chemical analysis and not mere visual inspection." *State v. Ward*, 364 N.C. 133, 142, 694 S.E.2d 738, 744 (2010).

At trial, Meyers was tendered and qualified as an expert in forensic science and forensic drug chemistry without objection. Upon being qualified as an expert, Meyers gave the following testimony:

> [STATE:] . . . [D]id you receive this substance at your lab?
>
> [MEYERS:] Yes, I did.
>
> [STATE:] And if you'll tell the jurors if you know when you received it and what, if anything, you did with the item.
>
> [MEYERS:] I received the evidence on February 10, 2020, and I conducted an analysis on the crystalline material that was contained inside.
>
> [STATE:] Okay. And I guess without being too technical

for us, could you tell us what -- what do you do to determine what type of controlled substance -- substance that you may have received?

[MEYERS:] In this case, I performed a preliminary color test known as the marquis color test, and I also completed a confirmatory infrared spectrophotometer test as well. And in this case, I identified methamphetamine, which is a Schedule II controlled substance.

[STATE:] Okay. And that was your opinion based on your analysis?

[MEYERS:] Yes.

Defendant argues that Meyers' testimony was admitted in violation of Rule 702(a) because Meyers failed to explain the procedure she employed or how that procedure was applied to the facts of this case.

This Court rejected a similar argument in *State v. Piland*, 263 N.C. App. 323, 822 S.E.2d 876 (2018). In *Piland*, defendant was charged with several drug-related offenses after law enforcement officers recovered a bottle containing a large quantity of tablets from his residence. 263 N.C. App. at 326-27, 822 S.E.2d at 881. At defendant's trial, a forensic scientist gave expert testimony that she "performed a chemical analysis on a single tablet to confirm that they did in fact contain [hydrocodone]," but the expert did not identify the chemical analysis she performed or describe how it was performed. *Id.* at 338-39, 822 S.E.2d at 888. This Court held that "it was error for the trial court not to properly exercise its gatekeeping function of requiring the expert to testify to the methodology of her chemical analysis." *Id.* at 339-40, 822 S.E.2d at 888. Nonetheless, the error did not amount to plain error

because "the expert testified that she performed a 'chemical analysis' and as to the results of that chemical analysis." *Id.* at 340, 822 S.E.2d at 888. This Court reasoned that the expert's testimony did "not amount to 'baseless speculation,'" and thus "was not so prejudicial that justice could not have been done." *Id.* (citation omitted).

We reach the same conclusion here. At Defendant's trial, Meyers gave expert testimony that she "performed a preliminary color test known as the marquis color test" and "a confirmatory infrared spectrophotometer test" from which she identified the evidence in this case to be methamphetamine. Although Meyers identified the analysis that she performed, she did not explain the methodology of that analysis. Thus, the trial court erred by failing to exercise its gatekeeping function. *See id.* at 339-40, 822 S.E.2d at 888. However, the error does not amount to plain error because Meyers identified the tests she performed and the result of those tests. *See id.* at 340, 822 S.E.2d at 888. Accordingly, Meyers' testimony did "not amount to 'baseless speculation,'" and thus "was not so prejudicial that justice could not have been done." *Id.* (citation omitted).

## B. Closing Argument

Defendant argues that the trial court erred by failing to intervene ex mero motu when the prosecutor used Defendant's past convictions as substantive evidence of Defendant's guilt during closing argument.

"When a defendant appears as a witness at trial, evidence of the defendant's past convictions may be admissible for the purpose of attacking the defendant's

credibility as a witness." *State v. McEachin*, 142 N.C. App. 60, 69, 541 S.E.2d 792, 799 (2001) (citing N.C. Gen. Stat. § 8C-1, Rule 609(a)).  However, "it is improper for the State to suggest in its closing argument to the jury that [such] evidence is substantive evidence of the defendant's guilt." *Id.* (citation omitted).

Where, as here, the defendant did not object at trial to an improper jury argument, the defendant must show that the prosecutor's argument was "so grossly improper that the trial court abused its discretion by failing to intervene ex mero motu." *State v. Campbell*, 359 N.C. 644, 676, 617 S.E.2d 1, 21 (2005) (citation omitted).  "To make this showing, defendant must demonstrate that the prosecutor's comments so infected the trial with unfairness that they rendered the conviction fundamentally unfair." *Id.* (quotation marks and citation omitted).

Here, Defendant testified in her own defense, and her past convictions were admitted for the purpose of attacking her credibility under Rule 609(a).  Throughout his closing argument, the prosecutor permissibly attacked Defendant's credibility, arguing to the jury that, "[i]f you want to believe her story, . . . you have to believe that Officer Sheets is lying," and asking the jury to discount Defendant's testimony:

> I would ask you to discount everything she said.  She doesn't get to call [Sheets] -- and I'll just say a liar or giving a mistruthful statement from that stand and then say, okay, believe me, believe my testimony up here.  Either you're going to believe her or you don't.  And my position is you don't believe her because Detective Sheets was credible and he's truthful about what took place.

The prosecutor emphasized that credibility was the crux of the jury's decision:

What it comes down to, ladies and gentlemen, I'll contend to you is the believability of the witnesses. If you believe everything . . . Sheets has said, then she's guilty of transporting methamphetamine and possession of methamphetamine by trafficking. If you disbelieve what Detective Sheets has told you with regards to her statements, then you could find her not guilty.

But, in essence, that's what it really boils down to. I can sit here and argue all the elements of the case[,] . . . but if you believe his testimony, she's guilty. If you don't believe his testimony, then she's not guilty.

The prosecutor also referenced Defendant's past convictions without objection:

And so that -- that begs the question, who is this young lady? I will contend to you she's -- she's someone who's involved in drug deals. You heard about her prior record. Although it is larceny and obtaining property by false pretense, that gives you some preview as to who she is.

While the vast majority of the prosecutor's closing argument permissibly attacked Defendant's credibility, the contested statement improperly suggested that Defendant was more likely to be guilty of the charged offenses based on her past convictions. However, the improper statement comprised only a few lines of the prosecutor's eighteen-page closing argument, as transcribed, and was not so grossly improper that it warranted judicial intervention. *C.f. State v. Tucker*, 317 N.C. 532, 543-45, 346 S.E.2d 417, 423-24 (1986) (ordering a new trial when prosecutor repeatedly used defendant's past convictions as substantive evidence of defendant's guilt over objection); *McEachin*, 142 N.C. App. at 70, 541 S.E.2d at 799-800 (assuming without deciding that prosecutor's argument that defendant had 'killed before and . . . he's killed again' was grossly improper). Thus, the prosecutor's reference to

Defendant's past convictions did not "so infect[] the trial with unfairness that [it] rendered the conviction fundamentally unfair." *Campbell*, 359 N.C. at 676, 617 S.E.2d at 21 (citation omitted). Accordingly, the trial court did not abuse its discretion by failing to intervene ex mero motu.

### III. Conclusion

For the foregoing reasons, the trial court did not plainly err by allowing the expert to testify that the substance was methamphetamine, and the trial court did not abuse its discretion by failing to intervene ex mero motu during closing argument.

NO PLAIN ERROR AND NO ERROR.

Judges GORE and FLOOD concur.